**Preston HALL, Petitioner,**

v.

**George W. SUMNER, Warden of California State Prison at San Quentin, Respondent.**

**No. C–79–1797 SW.**

United States District Court, N. D. California.

April 21, 1981.

Preston Hall, Tamal, Cal., for petitioner.

George Deukmejian, Atty. Gen., of the State of California, Robert H. Philibosian, Chief Asst. Atty. Gen., Criminal Division, Edward P. O'Brien, Asst. Atty. Gen., William D. Stein, J. Patrick Collins, Deputy Attys. Gen., San Francisco, Cal., for respondent.

## ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS

SPENCER WILLIAMS, District Judge.

Petitioner, Preston Hall, is before this court in *forma pauperis* and *in pro per* seeking relief pursuant to 28 U.S.C. § 2254(b)(c). He claims he was denied effective assistance of counsel at trial. In support of this petition, petitioner alleges ten specific errors or omissions of his defense counsel.[1] Respondent contends that on eight of the claims, petitioner has failed to exhaust remedies available in the state courts and thus his petition cannot be considered in this court. On the remaining two claims, the State admits exhaustion but argues the claims lack merit. The court finds petitioner has exhausted his state remedies and considers his petition on the merits. However, his claims of ineffective assistance of counsel are rejected.

### FACTUAL BACKGROUND

In early December, 1974, petitioner allegedly kidnapped and assaulted Shirley Wilson, petitioner's long-time girlfriend. She subsequently brought charges against him. In January, 1975, petitioner was charged with intimidation of a witness— Shirley Wilson. In March, 1975, petitioner was charged with a second assault on Shirley Wilson, which allegedly occurred on January 29, 1975. He was also charged with the following violations said to have occurred on February 9, 1975: the murder of Shirley Wilson; assault with intent to commit murder and attempted murder of Curtis Boyd, Wilson's nephew; burglary with intent to commit murder and possession of a concealed weapon by a convicted felon. All of the charges were consolidated for trial.

The actual trial commenced on October 6, 1975 and lasted twelve days. The jury reached a verdict of guilty on all charges except the charge of assault with intent to commit murder, on which they reached no decision.

Before addressing the merits of the petition, this court must first address respondent's argument that petitioner has failed to exhaust state remedies.

*Exhaustion of available state remedies.*

Respondent contends that all but two of petitioner's claims have not been fully adjudicated in state court. Petitioner presented

---

1. See n.9 *infra.*

his case through the entire appeals process, but did not utilize state habeas corpus proceedings. However, the Ninth Circuit has found that in California, the issue of ineffective assistance of counsel may be presented on appeal.[2] Petitioner is not required to show that he sought collateral review in state court before becoming eligible to present his petition for habeas corpus relief in federal court.[3]

■ Respondent contends a claim is not raised unless the alleged facts giving rise to the claim appear in the trial record. This is not true; the court may also look to the appeals record to determine whether petitioner has presented his claims to the state court.[4]

In *Smith v. Digmon*, the United States Supreme Court found that claims raised in the appellate briefs satisfied the exhaustion requirement:

It is too obvious to merit extended discussion that whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court, and, indeed, in this case, vigorously opposed in the State's brief. It is equally obvious that a district court commits plain error in assuming that a habeas petitioner must have failed to raise in the state courts a meritorious claim that

he is incarcerated in violation of the Constitution if the state appellate court's opinion contains no reference to the claim.[5]

Furthermore, the Ninth Circuit has held that the exact claims presented in the habeas corpus petition need not have been raised in the state proceedings:

The question ... is whether any of the contentions made in the present petition are the *substantial equivalent* of contentions presented by petitioner to the state courts upon his appeal from conviction. [Footnote omitted]. If so, they should here be considered on the merits. [Emphasis added].[6]

■ As recognized by the United States Supreme Court in *Wilwording v. Swenson*, the exhaustion requirement was "merely ... designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."[7] The need for exhaustion of state remedies is a matter of comity, not a limitation on the power nor a limitation on the jurisdiction of the federal courts.[8]

■ Under these principles, the court examines each of petitioner's claims and finds they were raised sufficiently to satisfy the exhaustion requirement. The specific references evidencing where and how these claims were raised are set out in a footnote.[9]

---

**2.** *Thompson v. Procunier*, 539 F.2d 26, 27–28 (9th Cir. 1976).

**3.** *Gonzales v. Stone*, 546 F.2d 807, 809 n.2 (9th Cir. 1976).

**4.** *Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978).

**5.** *Id.* at 333–34, 98 S.Ct. at 598.

**6.** *Schiers v. People of the State of California*, 333 F.2d 173 (9th Cir. 1964).

**7.** *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971).

**8.** *Harris v. Superior Court of the State of California for the County of Los Angeles*, 500 F.2d 1124 (9th Cir. 1974), *cert. denied*, 420 U.S. 973, 95 S.Ct. 1394, 43 L.Ed.2d 652 (1975). *See Carothers v. Rhay*, 594 F.2d 225 (9th Cir. 1979).

**9.** The California Court of Appeal briefly addressed the issue of ineffective assistance of counsel and dismissed it as an unsupported claim. Because the Court of Appeal reached such a general conclusion, our consideration of the petitioner's claims and whether they were raised at the state level focuses on the parties' briefs. Hall's petition alleges the following errors of his defense counsel:

(1) *Failure to sufficiently investigate the facts*, leading to the withdrawal of the crucial defense of self defense; in particular: the shooting scene, ballistic reports, the existence of other witnesses aware of other weapons present at the shooting scene, and the murder victim's propensity towards violent conduct.

This point was raised several times. (See petitioner's brief at 29, respondent's brief at 46–48, petitioner's reply brief at 5). The only claim raised here by petitioner which was not men-

*Ineffective assistance of counsel.*

 The test for ineffective assistance of counsel was set out by the Ninth Circuit, sitting *en banc,* in *Cooper v. Fitzharris*: [10]

> Defense counsel's errors or omissions must reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent criminal defense attorney— they must be errors a reasonably competent attorney acting as a diligent conscientious advocate would not have made.... [11]

Furthermore, when such a claim "rests upon specific acts and omissions of counsel at trial ... relief will be granted only if it appears that the defendant was prejudiced by counsel's conduct". [12]

In this case, petitioner's claim of ineffective assistance of counsel rests upon ten specific acts and/or omissions of defense counsel during both the pre-trial and trial proceedings. This court, after reading the entire record [13], finds that petitioner was not prejudiced by defense counsel's conduct and his claim for relief must be denied.

In discussing each of the alleged errors of petitioner's trial counsel [14], the following

tioned in the appeals process was the victim's propensity towards violent conduct.

(2) *Failure to correctly object to testimony as to petitioner's statement during arrest concerning a shotgun in his car.*
There is no conflict here. The state agrees that this claim exhausted state remedies. However, they do argue the claim is not meritorious. (Respondent's Return to Order to Show Cause, p. 5).

(3) *The defense stipulation to petitioner's prior felony convictions.*
See petitioner's brief at 33–36; respondent's brief at 49–51.

(4) *Defense counsel's attempt to waive petitioner's first preliminary hearing.*
See petitioner's brief at 36–37; respondent's brief at 35–36.

(5) *Failure to object to the consolidation of the charges stemming from the murder scene.*
There is no challenge here as to whether state remedies have been exhausted. The state does argue the claim lacks merit. (Respondent's Return to Order to Show Cause, p. 5).

(6) *Failure to arrange a timely psychological examination for the petitioner so that a proper plea of insanity could have been raised.*
See the Court of Appeal's decision at pp. 4–5. (Also, petitioner's brief at 40–41; respondent's brief at 43–45, 52).

(7) *Failure to pursue the fact of petitioner's high blood alcohol content after the shooting incident in support of a defense of diminished capacity.*
The only references to this claim are that a stipulation was entered into by the parties that when Hall was taken to the hospital with a bullet wound February 9, 1975, his blood contained .15% alcohol. (Petitioner's brief at 9). Respondent's brief goes into greater detail, indicating that at trial a doctor testified as to what effect that level of alcohol has on one's physical and mental reflexes. (Respondent's brief at 29–30). It was an issue which the State, at the trial level, considered to be important enough to be raised and dealt with vis-a-vis expert testimony.

(8) *Refusal to call various defense witnesses.*
This claim was apparently raised at the sentencing hearings and it appears to stem from the allegations that defense counsel failed to follow up leads given to him by petitioner. (Court of Appeal's decision at 9–10).

(9) *Refusal to visit and consult with petitioner prior to trial.*

(10) *Refusal to allow petitioner to testify on his own behalf.*
These claims are derived from the failure of petitioner and his attorney to get along. The court finds them to fall within the ambit of petitioner's claim of ineffective assistance of counsel raised in the state court.

10. 586 F.2d 1325 (9th Cir. 1978), *cert. den.,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979).

11. *Id.* at 1330.

12. *Id.* at 1331.

13. This court has read the record of the numerous pre-trial proceedings, as well as the trial transcript and the parties' respective briefs on direct appeal (up to the California Supreme Court where a petition for hearing was denied). The court is of the opinion that the evidence presented in the transcripts is sufficient to enable it to rule on the merits of the writ without holding an evidentiary hearing. (It should be noted that while Petitioner Hall is proceeding in propria persona in this writ of habeas corpus, he was represented by a court-appointed lawyer in the California Court of Appeal and the California Supreme Court.) References to the record at trial are denoted "RT"; all other references give the actual date of the pre-trial proceeding involved.

14. Mr. Lichtenegger, petitioner's defense counsel of record at trial, was originally retained by petitioner for the kidnapping and assault charges involving Shirley Wilson in the early part of December, 1974. Although there are

determinations must be made: first, was defense counsel's conduct within the range of competence demanded of criminal defense attorneys, and, if not, was petitioner prejudiced by the defense counsel's conduct—whether the alleged errors are considered singly, or in combination? [15]

■ Four of petitioner's ten allegations are either flatly contradicted by the record or not supported by a sufficient factual basis and therefore are not discussed in detail. These are set out in a footnote with the relevant references to the record where appropriate.[16] All but two of the remaining errors alleged can be characterized as tactical decisions or fall well within the

standard of competence demanded by *Cooper*.[17] The last two errors, however, raise serious questions concerning the competency of counsel at trial. All six are discussed in more detail below.

■ At the outset, several points should be emphasized. First, "[t]he Constitution does not guarantee representation that is infallible. The accused 'assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts...'."[18] Second, this court will not attempt to second-guess the choice of trial tactics made by counsel at the trial level. In this regard, the observations made by

numerous references in the record concerning differences of opinions between the petitioner and Mr. Lichtenegger during the various proceedings, Mr. Lichtenegger remained Hall's attorney of record throughout the trial. Another defense attorney, Mr. Lloyd, was recognized by the court at the start of the trial as an assistant only.

15. *Cooper v. Fitzharris, supra*, at 1333; *Ewing v. Williams*, 596 F.2d 391 (9th Cir. 1979).

16. These allegations are as follows:
(1) *Defense counsel refused to visit and consult with petitioner during the nine months he spent in jail prior to trial.*
The record reflects that the defense counsel saw petitioner on a number of occasions prior to trial (see pp. 142, 167 of the 9/18/75 pre-trial proceeding). Indeed, there are indications from petitioner himself that he and Mr. Lichtenegger could not agree on much, implying that they had discussions concerning the case prior to trial.
(2) *Defense counsel did not allow him to testify at trial.*
This court points out that while petitioner has the constitutional right *not* to testify, the converse of that does not necessarily rise to a constitutional level. Moreover, petitioner has not alleged with any specificity facts which would indicate that Mr. Lichtenegger in any way coerced him or prevented him from testifying at his trial. *See United States v. Eaglin*, 571 F.2d 1069, 1087 (9th Cir. 1977), *cert. den.*, 435 U.S. 906 (1978). (*See also*, RT, p. 1342, lines 20–23).
(3) *Defense counsel failed to sufficiently investigate the facts; in particular:*
(a) *the shooting scene*—
but see the statements on pp. 142 and 150 of the 9/18/75 pre-trial proceeding. Apparently, *both* sides were hampered in their investigation because the furniture had been moved.
(b) *the ballistics reports*—

but see pp. 65–66 of the 6/12/75 hearing, p. 37 of the 9/11/75 pre-trial proceeding and p. 166 of the 9/18/75 pre-trial proceeding.
(c) *the existence of other witnesses aware of weapons at the shooting scene*—
however, Bruce Lattin did testify on this issue, and there is no indication that counsel failed to follow any leads of which he had knowledge in this area.
(d) *the victim's propensity, vel non, towards violent conduct*—
since this issue was brought out by Ms. Wilson's *own* testimony (on cross-examination at an earlier preliminary hearing)—RT 479, 486, additional evidence may not have been deemed necessary by defense counsel. *See, McNulty v. Olim*, 488 F.Supp. 1384, 1390 (D.Hawaii 1980). As a general matter concerning this allegation of failure to sufficiently investigate, the court notes that defense counsel had problems with funding and with several investigators initially hired. (See n.30, *infra* and the transcript cite therein.)
(4) *Defense counsel refused to call various defense witnesses.*
Petitioner, in his affidavit in support of the writ of habeas corpus, has named only one person, a Becky Anderson, who he claims was a witness inside the house. Until this time, nowhere in the record is there a reference to another witness being inside the house. Such a belated allegation must be viewed with suspicion. The record does not indicate when this piece of information was allegedly given to trial counsel. In all other respects, it appears that defense counsel made numerous attempts to contact and interview potential witnesses (see, e.g., p. 72 of the 8/1/75 pre-trial proceeding; pp. 126–127 of the 8/26/75 pre-trial proceeding).

17. *Cooper v. Fitzharris, supra.*

18. *Id.* at 1330.

**1020**

the U.S. Court of Appeals in *United States v. Bosch*[19] apply:

> Even the most skillful criminal attorneys make errors during a trial. The myriad of decisions which must be made by defense counsel quickly and in the pressure cooker of the courtroom makes errorless representation improbable, if not impossible. This is particularly so since the determination of whether there have been errors is made by a court far removed from the heat of trial combat and with the time necessary to make a reasoned judgment. *Thus, a choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally-deficient representation under the reasonably competent assistance standard.* [Emphasis added].[20]

With the foregoing in mind, the court finds that the following allegations fall within the parameters of tactical decisions, none of which amount to ineffective assistance of counsel:

(1) *Defense counsel's attempt to waive petitioner's first preliminary hearing.*

■ On the morning of petitioner's first preliminary hearing in December, defense counsel entered a waiver of petitioner's right to the preliminary hearing.[21] That afternoon, the court denied the defense counsel's motion for a continuance, and the preliminary examination was then conducted.

**19.** 584 F.2d 1113 (1st Cir. 1978).

**20.** *Id.* at 1121.

**21.** See pp. 1–2 of the 12/19/74 preliminary examination. Based upon this strategy, defense counsel had failed to subpoena any witnesses and represented to the court that he was unprepared to proceed at that time.

**22.** See n.21, *supra.*

**23.** See p. 27 of the 12/19/74 preliminary examination.

**24.** RT p. 1231.

**25.** RT p. 1232.

**26.** During a brief discussion at the side bench, even the court recognized the existence of tactical advantages: (RT p. 1233)

Although counsel's tactical decision, motivated by his lack of preparation at that stage[22], may have been an error in judgment, such conduct does not amount to ineffective assistance of counsel. The municipal court found "ample evidence to hold the defendant to answer on both counts."[23] Moreover, petitioner was not precluded thereafter from calling witnesses at the time of trial to address these counts before the trier of facts.

(2) *Defense counsel's stipulation to petitioner's prior felony convictions.*

■ Near the end of trial, the defense announced that the parties would enter into a stipulation regarding two prior convictions of the petitioner.[24] The court immediately inquired of the defendant whether he was intending to waive certain of his rights regarding self-incrimination. The record indicates defense counsel had not discussed such a stipulation with the petitioner prior to this time.[25]

Despite counsel's initial—and perhaps hasty—statement stipulating to the prior convictions, the decision itself appears to be a tactical one[26], and cannot be viewed as outside the range of competence expected of criminal attorneys.[27]

(3) *Defense counsel's failure to subject petitioner to a timely psychological examination so that a proper plea of insanity could have been raised.*

■ The record reveals that defense counsel made a reasoned decision not to

"THE COURT: What I suggest is this: Because this is an important thing, I'm going to take a short recess—
MR. LLOYD: (Interrupting) Thank you, your Honor.
THE COURT: And we'll excuse the jury and you can discuss it. Tactically, it maybe of advantage to Mr. Hall to admit that, so—"
Shortly thereafter, petitioner did consent to the stipulation as announced. (RT p. 1234).

**27.** *See also, United States v. Parr-Pla*, 549 F.2d 660, 663–64 (9th Cir. 1977), *cert. den.*, 431 U.S. 972, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977); *United States v. Grummel*, 542 F.2d 789, 791 (9th Cir. 1976), *cert. denied* 429 U.S. 1051, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977).

have the defendant go through psychological testing in the early stages of his investigation.[28] Moreover, the court notes that the petitioner was eventually given such an exam, and that defense counsel never moved to renew his motion to change petitioner's plea once he received the results of that exam. Under the circumstances, this court finds no error in this tactical decision, since the results of the exam are not part of the record.

(4) *Defense counsel's failure to pursue a potential defense of diminished capacity based upon the alcohol content found in petitioner's bloodstream just after the shooting incident.*

Both sides entered into a stipulation during the trial that when Hall was taken to the hospital with a bullet wound on February 9, 1975, his blood contained .15% alcohol.[29] Petitioner claims the defense counsel's failure to present specific defense evidence—e. g., expert testimony—and pursue a potential defense of diminished capacity resulted in ineffective assistance of counsel. The court does not agree.

▮ Counsel for the defense is not required to present expert testimony on all possible defenses in a case. This is particularly true when, as in this case, counsel has access to a limited amount of resources.[30]

▮ The record indicates that the strategy of the defense was to concentrate on the physical evidence—e. g., the number of shots fired and the manner in which they occurred—in order to create a reasonable doubt surrounding the prosecution's theory of premeditated murder. In pursuit of this strategy, the defense presented expert testimony of a criminologist who had been hired by the defense to do an extensive analysis of the physical evidence, including the bullets, guns and damage in the apartment where the shooting occurred.

Given the defense strategy, counsel's decision not to present expert testimony on the effects of a particular level of blood alcohol was reasonable.[31] Further, the court notes that while the defense did not produce any of its own evidence on this issue, defense counsel—through cross-examination—was able to elicit enough information to make an argument before the jury regarding diminished capacity.[32]

▮ Petitioner's remaining allegations present closer questions. First, petitioner claims that defense counsel failed to make the proper objection—on Fourth Amendment grounds ("fruit of the poisonous tree")—to a statement made by Hall during his arrest to an officer concerning a shotgun in his car.[33] At trial, the prosecution called Officer Martin to testify as to this admission by Hall. Defense counsel object-

28. See pp. 151–52 of the 9/18/75 pre-trial proceeding. *Cf. Lewis v. United States*, 585 F.2d 915 (8th Cir. 1978).

29. RT p. 826.

30. The record shows that defense counsel represented to the trial court that he was operating on a limited amount of funds. Counsel requested funds for an investigator on several occasions, and was finally given limited court funding on September 11, 1975. (See pp. 26–51 of the 9/11/75 pre-trial proceeding.)

31. *Cf. Zapata v. Estelle*, 588 F.2d 1017 (5th Cir. 1979).

32. See RT p. 838 (cross-examination of Dr. Hull), and RT pp. 1362–1366 (defense closing argument).

33. The facts underlying this claim are as follows: On December 31, 1974, Officers Martin and Rasler went to Hall's apartment to arrest

him on the charge of intimidation of a witness. The record indicates that while Hall and one officer were in the living room, the other officer flipped over a pillow in the bedroom and uncovered a pistol. When confronted with the pistol, Hall told the officers that the gun belonged to Shirley Wilson and that Curtis Boyd had placed it there. He then picked up a dice cup on the dresser which was filled with rifle shells and poured them into one of the officer's hands, stating to the officer that the shells were for a shotgun in his car and that Boyd had placed that gun in his car as well.

A police report which was filed shortly after the incident made no mention of this statement, although it was mentioned at a preliminary examination in January, 1975. The pistol which had been seized during that arrest was later suppressed at a suppression hearing prior to the trial.

ed to this testimony on grounds of irrelevancy and non-compliance with an outstanding discovery order.[34] Petitioner contends this damaging information would not have come in had defense counsel made the proper objection. The government contends had the objection been made, it would not have properly been sustained because the statement had been sufficiently purged of the primary taint; thus the failure to press a Fourth Amendment claim as a basis for his objection was not error.

It is clear that defense counsel did not want the evidence to come in; it is not clear why an illegal search and seizure objection was not made. The facts surrounding the statement were so ambiguous that a reasonably diligent and competent defense attorney should have raised an objection on that ground. The court need not decide, however, whether such an objection would have been sustained, for even if the evidence was inadmissible, its admission into evidence was not prejudicial under the Ninth Circuit standard discussed *infra*.[35]

 Finally, petitioner claims that defense counsel committed prejudicial error by failing to oppose the prosecution's motion on March 18, 1975, to consolidate all of the charges against him. Defense counsel had opposed an earlier motion by the prosecution, on February 3, 1975, to consolidate the charges pending against Hall at that time[36] on grounds of potential prejudice to the defense.[37] The motion was granted and those charges were consolidated. On March 18, 1975, the prosecution moved to consolidate two additional sets of charges against Hall.[38] This motion was granted unopposed by defense counsel.[39]

It was not until the morning of the trial (September 30, 1975) that defense counsel made a motion to sever the charges—requesting that at least the murder charge be tried separately. His argument for severance was based upon the excessive prejudice he feared would develop from the earlier assault and kidnapping charges.[40]

An examination of the record reveals that the reason defense counsel did not oppose the motion on March 18th was because he was unprepared at that time.[41] While this may be true, the court questions defense counsel's delay until the morning of trial to bring the motion to sever.

Defense counsel's failure to oppose the motion on March 18th does not, by itself, constitute ineffective assistance of counsel. However, it was incumbent upon counsel, given the number and gravity of the charges involved, to bring a motion to sever as soon as practicable, that is, as soon as he was prepared on the issue. The prosecution was ready to try the case in May or June of 1975[42] and had prepared the case with the charges consolidated. Under these circumstances, it does not appear that defense counsel was diligent in this matter.

The question remains whether any of the above errors were prejudicial.

34. RT pp. 677–79, 686–90.

35. *Cooper v. Fitzharris, supra; Ewing v. Williams, supra.*

36. The first set of charges involved kidnapping and assault of Wilson arising out of events on December 5 and 6, 1974; the second set involved charges (of influencing a witness—Wilson) for which Hall was arrested on December 31, 1974.

37. See p. 6 of the 2/3/75 pre-trial proceeding.

38. One charge involved another assault against Wilson for which Hall was arrested on January 31, 1975; the other charges—murder of Wilson, possession of a concealable firearm, burglary with intent to commit murder of Boyd, assault with intent to murder Boyd and attempted murder of Boyd—all stemmed from events occurring February 9, 1975.

39. See p. 11 of the 3/18/75 pre-trial proceeding.

40. RT pp. 31–33.

41. See p. 24 of the 9/11/75 pre-trial proceeding.

42. See p. 76 of the 8/1/75 pre-trial proceeding. Counsel conceivably should have brought the motion sometime between that period and the September trial date. *See* n.10 in *Cooper v. Fitzharris, supra.*

*Prejudice to the defense.*

The Ninth Circuit [43] has been clear only as to what prejudice does *not* mean: "[T]he requirement that prejudice appear does not mean that relief is available only if the defendant would have been acquitted but for counsel's blunders." [44] Subsequent Ninth Circuit case law has failed to offer a clear definition of what constitutes prejudice. [45]

The dissent in *Cooper* urges that the *Chapman* [46] standard, announced by the U.S. Supreme Court, be applied [47]—i. e., that the error(s) be harmless beyond a reasonable doubt. At least one district court, however, has fashioned a standard between the majority and the dissent in *Cooper.* [48] In *McNulty v. Olim* [49], the District Court of Hawaii found the proper standard was: "Absent the errors, or [rather], with a reasonably competent defense attorney (and reasonably competent does not mean perfect), is it more likely than not that the jury would have reached a different result, i. e., acquittal or conviction on a lesser charge." [50] For the reasons stated below, this court finds that petitioner's defense was not prejudiced by counsel's conduct under either standard.

This court has already held that eight of petitioner's allegations did not meet the first part of the *Cooper* test. Thus, the inquiry as to the prejudicial effect of the deficiencies of defense counsel will be on the final two allegations discussed above.

The court believes counsel's failure to object to the admission of petitioner's state-ment regarding the shotgun in his car resulted in no appreciable prejudice to the defense. The statement was not crucial to any element of any of the charges against the defendant, it was a collateral piece of evidence concerning the presence of guns throughout this case. Its effect, if anything, was cumulative in nature.

The effect of counsel's failure to oppose the motion to consolidate all of the charges, and his subsequent untimely motion to sever, was also not prejudicial. In this regard, the court notes that a substantial portion of the evidence that was presented in the earlier charges (e. g., to prove the kidnapping and assault charges) would be admissible to prove motive, intent, deliberation, etc. with respect to the murder charge. [51]

Since multiple errors have been alleged, this court is also required to consider whether prejudice may have resulted from the cumulative impact of the multiple deficiencies. [52] After reviewing the entire record, the court is satisfied that no such prejudicial impact has occurred.

Accordingly, for the foregoing reasons, the petition for writ of habeas corpus is hereby DENIED.

IT IS SO ORDERED.

43. *Cooper v. Fitzharris, supra.*

44. *Id.* at 1333.

45. *See United States v. Winston,* 613 F.2d 221 (9th Cir. 1980); *United States v. Coupez,* 603 F.2d 1347, 1350 (9th Cir. 1979); *United States v. Brackenridge,* 590 F.2d 810 (9th Cir. 1979) (per curiam) *cert. denied,* 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979); *United States v. Currie,* 589 F.2d 993, 996 (9th Cir. 1979). The court in *Ewing v. Williams, supra,* does make a fleeting remark concerning the "harmless error" rule. *Id.* 596 F.2d at 395.

46. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

47. *Cooper v. Fitzharris, supra,* at 1341 (dissent).

48. *McNulty v. Olim,* 488 F.Supp. 1384 (D.Hawaii 1980).

49. *Id.*

50. *Id.* at 1390.

51. See the government's brief in the California Court of Appeal, pp. 67–68. *See also, United States v. Currie, supra.*

52. *Cooper v. Fitzharris, supra,* p. 1333.