Preston HALL, Petitioner-Appellant,

v.

George W. SUMNER,
Respondent-Appellee.

No. 81–4343.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1982.

Decided July 27, 1982.

William M. Goodman, Topel & Goodman, San Francisco, Cal., for petitioner-appellant.

J. Patrick Collins, Deputy Atty. Gen., San Francisco, Cal., for respondent-appellee.

Before KILKENNY and HUG, Circuit Judges, BROWN *, District Judge.

HUG, Circuit Judge:

Preston Hall appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. In the district court, he pointed to ten separate instances of conduct by his trial attorney that he believed showed ineffective assistance of counsel. The district court denied his petition without a hearing.

On appeal, Hall limits his ineffective assistance claim to trial counsel's failure to investigate various aspects of the case, and counsel's failure to pursue diminished capacity and insanity defenses. Hall contends that the failures in those areas were the result of counsel's general unpreparedness for trial. As a result, he asserts that the district court misapplied the prejudice requirement set out in *Cooper v. Fitzharris*, 586 F.2d 1325, 1331–33 (9th Cir. 1978) (*en banc*), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). *Cooper* states that "[w]hen the claim of ineffective assistance of counsel rests upon *specific acts and omissions* of counsel at trial . . . relief will be granted only if it appears that the defendant was prejudiced by counsel's conduct." *Id.* at 1331 (emphasis added).

Hall's allegations of ineffective assistance are not supported by the record, however, so we do not need to reach the application of the *Cooper* prejudice requirement. The denial of Hall's petition is affirmed, 512 F.Supp. 1014.

## 1. PROCEDURAL BACKGROUND

The charges on which Hall was tried were the result of a consolidation of four separate cases against him. The first case arose from the December 1974 kidnapping and assault of one Shirley Wilson. The second involved witness tampering, based on threats against Wilson's life. The third

---

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

involved a January 29, 1975, knife attack on Wilson. The fourth was for first degree murder, the product of a February 9, 1975, gun fight in Wilson's apartment that resulted in the death of Wilson, serious injuries to Hall, and minor injuries to a third person.

Hall was tried in October, 1975, and represented by retained counsel Larry J. Lichtenegger. He was convicted on all counts by a jury and sentenced to death. The California Court of Appeal affirmed the conviction, but modified the sentence to life imprisonment. The California Supreme Court denied review, and the United States Supreme Court denied certiorari. *Hall v. California*, 439 U.S. 972, 99 S.Ct. 466, 58 L.Ed.2d 432 (1978).

■ Because Hall raised substantially similar ineffective assistance claims in his state court appeal, it is not necessary for him to have filed a state habeas petition in order to collaterally attack his conviction in federal court. *See Thompson v. Procunier*, 539 F.2d 26 (9th Cir. 1976); *Gonzales v. Stone*, 546 F.2d 807, 808, n.2 (9th Cir. 1976); *Schiers v. California*, 333 F.2d 173 (9th Cir. 1964). The state court, after briefing, argument, and supplemental briefing, stated, in an unpublished opinion, that it had reviewed all of Hall's ineffective assistance claims and found them singularly and collectively meritless.

## 2. ATTORNEY COMPETENCE

In his appeal to this court, Hall emphasizes two general areas in which he alleges Lichtenegger's lack of preparedness manifested incompetence. The first involves Lichtenegger's investigation of various factual aspects of the shooting incident. The second involves Lichtenegger's pursuit of diminished capacity and insanity defenses.

■ In order to establish ineffective assistance, Hall must show that Lichtenegger's performance was not that of "a reasonably competent attorney acting as a diligent conscientious advocate." *Cooper v. Fitzharris*, 586 F.2d at 1330. The record "must reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent criminal defense attorney." *Id.*

### a. *Investigation of Facts*

As to the alleged defects in Lichtenegger's investigation of the facts, Hall's ineffective assistance claim must fail. For the most part, his claims are utterly unsupported by the record. The record shows that Lichtenegger was struggling with an uncooperative client, uncooperative witnesses (many being relatives of the victim), a district attorney's office that required direction from the court to comply with discovery orders on more than one occasion (in fact, significant prosecution evidence was excluded at trial because of failure to comply with a discovery order), a maze of conflicting police and ballistics reports, a client with what appeared to be several more bullet wounds than was possible in light of other evidence, an unavailable surgeon who, when ultimately located, explained that the additional wounds were the result of drainage tubes implanted during surgery and removed a few days later, and a crime scene that had been re-let to tenants who were out of town attending a family medical emergency. Lichtenegger's competence and diligence were well demonstrated at trial by his clear command of the facts, his timely objections, and his presentation of a plausible alternative to the prosecution's theory of the case.

■ Hall's claim that Lichtenegger failed to investigate the availability of witnesses is unsupported by the record and completely unconvincing. Hall states that five eyewitnesses to the shooting, and the events leading up to it, were available but not called. There is no indication from any source, other than Hall's post-conviction statements, that these unnamed witnesses existed. Hall's statements are patently incredible. No failure to investigate potential witnesses has been demonstrated.

Hall's only allegation requiring close examination is in regard to the consolidation of the four cases against him. Lichtenegger stated on September 11 that he had not objected to the March 18 consolidation of the cases because he was unprepared to do

so at that time. The district court found that Lichtenegger had not been diligent, in that he did not make a motion to sever earlier. The court found, however, that no prejudice resulted because most of the evidence relating to Hall's prior contacts with Wilson would have been admissible in the murder trial regardless of any severance of the cases.

While the result of the district court's analysis was correct, we question the need even to reach the prejudice inquiry. The district court was obliged to do so because its reading of the record indicated that Lichtenegger was unprepared to contest the consolidation when the issue was raised in March. While Lichtenegger said as much, in his September 11 effort to reopen the issue, the record does not support that explanation.

The facts and circumstances Lichtenegger presented in support of severance in September were equally available to him when he did not contest consolidation in March. He argued that the prejudicial impact of the prior acts of violence against Wilson would make impossible a fair trial on the murder charge. The record shows that, well before the shooting, Lichtenegger was very familiar with the factual and legal components of the other cases against Hall.

█ Lichtenegger's suggestion, in September, that he was unprepared in March to contest the consolidation, came in the midst of an almost frantic effort to convince the trial court that more time was needed to prepare Hall's defense. We see Lichtenegger's explanation, and his belated motion to sever, as part of an effort to postpone trial. Because continuances on other grounds were easier to come by in March than in September, and separate trials would not have prevented the admission of evidence on the prior violence, Lichtenegger's action in not contesting the March consolidation can be characterized as a competently made tactical choice. While his September efforts to avoid trial may have been overzealous, his action in March was reasonable and perfectly proper.

Thus, we conclude that Lichtenegger's conduct was that of "a reasonably competent criminal defense attorney," *Cooper v. Fitzharris*, 586 F.2d 1325, 1330, and we reject Hall's claim.

b. *Investigation of Defenses*

The second aspect of Hall's incompetence claim is based on Lichtenegger's alleged failure to pursue diminished capacity and insanity defenses. The district court specifically rejected Hall's claims concluding that, as to both defenses, Lichtenegger had made reasonable tactical decisions. We agree.

█ It is true that Lichtenegger did not obtain a psychiatric report on Hall until the eve of trial. He explained, however, that his difficulty in obtaining an accurate understanding of the facts would have made it improvident to spend money on an expert any earlier in the preparation of Hall's defense. Hall does not contest the fact that Lichtenegger did have a psychiatrist's report available on the day the prosecution made its opening statement. Hall also makes no suggestion that the report would have prompted a reasonably competent attorney to make a motion to amend the plea to one of not guilty by reason of insanity.

█ As to the diminished capacity defense, Lichtenegger successfully elicited enough information on cross-examination of the prosecution's expert to make a credible closing argument on the issue. There is no question that the defense was ably presented to the jury.

3. PREJUDICE

Because we conclude that Hall has not shown any incompetence on Lichtenegger's part, we do not reach the contention that the district court misapplied the *Cooper* prejudice requirement.

4. OTHER ALLEGATIONS

█ Hall's petition makes factual allegations other than those mentioned in the preceding discussion. The collective impact of those allegations is that Lichtenegger

never should have stayed with the case once the murder element was introduced. Hall argues that Lichtenegger was overwhelmed with the complexity of the case and, in the final analysis, should have stepped aside to allow a public defender to take over.

Most of the fuel for Hall's argument comes from Lichtenegger's own statements in various efforts to gain continuances. Hall asserts that those statements indicate that the need for continuances was a result of Lichtenegger's incompetence, rather than other outside factors. The record, however, indicates the contrary.

Lichtenegger's conduct, in stepping forward to represent Hall on the murder charge, is to be commended. He was already deeply involved in the three earlier cases associating Hall with the brutal attacks on Wilson and the threats on her life. He was aware that Hall's financial resources were limited. It appears, in addition, that his own financial position was not too secure at the time relevant here. Yet, despite these problems, Lichtenegger acted. Rather than allow what might have been a significant amount of time to pass before a public defender could be appointed, Lichtenegger began an investigation. He went to the scene of the crime within a few days of the shooting—before the police reports were ready and before his critically wounded client was able to talk with him. He found an empty apartment with some bullet holes in the walls.

Despite the failure by the police to preserve the crime scene, Lichtenegger was able to glean enough facts from his initial visit to recognize inconsistencies in the subsequent police crime and ballistics reports. At trial, he introduced a plausible theory, supported by evidence, that a prosecution witness, present in Wilson's apartment, had also been armed and involved in the shooting. Lichtenegger used his theory in an effort to attack the credibility of that witness's testimony at trial, and in an effort to raise a reasonable doubt in the minds of the jurors as to Hall's guilt. While his efforts were unsuccessful, that lack of success was the result of overwhelming evidence against his client, rather than of his own incompetence.

## 5. CONCLUSION

The district court's denial of Hall's petition is AFFIRMED.