**Billy R. SHAPLEY, Petitioner,**

v.

**Vernon G. HOUSEWRIGHT, et al., Respondents.**

No. CV-R-84-417-ECR.

United States District Court, D. Nevada.

June 14, 1985.

Billy R. Shapley, in pro. per.

D. Brian McKay, Atty. Gen. by Brian R. Hutchins, Deputy, Carson City, Nev., for respondents.

## ORDER

EDWARD C. REED, Jr., District Judge.

Billy Ray Shapley petitioned this Court on July 18, 1984, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that while incarcerated in the Nevada State Prison he had been denied 1) certain statutory good time credits in violation of NRS 209.443(1), (2) and 2) additional work/study time credits in violation of NRS 209.443(3) and Prison Procedure No. 344.

Shapley was tried in state court and, on June 25, 1976, convicted of five separate counts of forgery. He received a sentence of ten years on each count of forgery, with the sentences to run consecutively. He appealed his conviction on several grounds and the conviction was affirmed on March 30, 1977. *Shapely v. State*, 93 Nev. 184, 561 P.2d 1339 (1977).

Shapley then petitioned the state district court on August 17, 1982, for a writ of habeas corpus alleging that he had been denied certain statutory good time credits while in prison and also denied additional work/study time credits. A hearing was held in the state habeas case on May 18, 1983, and on May 25, 1983, the state district court denied Shapley's petition on the grounds that Shapley's statutory good time credits had been properly computed as to each sentence under NRS 209.443, where each sentence is separate for the purpose of computing good time credits. In addition, the court found that Shapley was capable of doing light work, that the light work he preferred was the preparation of various legal matters in state and federal court and that the prison had offered Shapley reasonable alternatives to allow him to earn work time credits even in the light of his physical conditions, which alternatives he had declined. The court found that Shapley had not complied with the conditions of Prison Procedure No. 344 and, therefore, was not entitled to work/study credits for disabled or handicapped prisoners under that procedure.

Shapley appealed the decision of the state habeas court to the state supreme court on June 6, 1983. Not long after, however, he withdrew his appeal and petitioned the district court for a rehearing which was denied on March 15, 1984. On March 21, 1984, Shapley again appealed to the state supreme court and on May 8, 1984, that court denied the appeal on the grounds that the appeal had not been timely filed under NRS 34.380(3). The court found that Shapley's "motion for rehearing did not operate to toll the time for appeal and the order denying rehearing is not appealable," citing NRS 177.015, NRS 34.-380(3) and *Alvis v. State Gaming Control Bd.*, 99 Nev. 184, 660 P.2d 980 (1983).

■ Before bringing a federal habeas action, a petitioner is required to exhaust his state court remedies on all of the issues presented. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). *See also Hall v. Sumner*, 682 F.2d 786 (9th Cir.1982).

■ The exhaustion requirement has not been met unless the highest state court has denied the claim on the merits; a denial on procedural grounds is insufficient. *Harris v. Superior Ct. of St. of Cal., Cty. of Los*

*Angeles,* 500 F.2d 1124, 1126 (9th Cir.1974) (en banc), *cert. denied,* 420 U.S. 973, 95 S.Ct. 1394, 43 L.Ed.2d 652 (1975). However, under the futility doctrine, where prior decisions of the state courts indicate that presentation of the claim to the state supreme court would be futile, the exhaustion requirement has been met. *Gardner v. Pitchess,* 731 F.2d 637, 640 (9th Cir. 1984); *Sweet v. Cupp,* 640 F.2d 233, 236 (9th Cir.1981). In addition, where state procedural obstacles preclude an effective state remedy, the federal courts must take jurisdiction. *Bartone v. United States,* 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11 (1962) (per curiam).

■ In the present case, it would be futile and a waste of judicial resources to require Shapley to present his habeas claim again to the state courts before allowing his petition to be heard here. For purposes of this matter he has exhausted his state court remedies.

Respondents moved this Court, pursuant to Fed.R.Civ.P. 12(b)(1), (6), to dismiss Shapley's petition for writ of habeas corpus. Shapley responded with accompanying points and authorities and additional exhibits and this Court ordered that respondents' motion to dismiss be treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b) and 56 and that the parties be given appropriate periods of time to supplement the motion and the opposition with all appropriate material.

On February 28, 1985, respondents supplemented their motion for summary judgment and moved to strike the twelve page of documents in Shapley's "Exhibit D". Shapley responded to the motion to strike with arguments and points and authorities but failed to include affidavits or other competent evidence as required by Fed.R. Civ.P. 56(c) establishing the veracity of the documents.

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.

R.Civ.P. 56(c); *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 676, 677 (9th Cir.1984). The evidence must be viewed in the light most favorable to the non-moving party. *Ward by and through Ward v. United States Department of Labor,* 726 F.2d 516, 517 (9th Cir.1984); *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1279 (9th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980). Although the initial burden of showing no issue of material fact is on the proponent, *Int. Un. of Bricklayers Etc. v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985); *Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870, 883 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983), the opponent must then present some significant probative evidence in opposition to the motion for summary judgment. *Compton v. Ide,* 732 F.2d 1429, 1434 (9th Cir.1984); *General Business Systems v. North Am. Philips Corp.,* 699 F.2d 965, 971 (9th Cir.1983). He may not rely solely on the allegations in his pleadings. *Franklin v. Murphy,* 745 F.2d 1221, 1235 (9th Cir.1984). Where the opponent is *pro se,* as in the present case, this Court will liberally construe his pleadings. *See Id.*

The record shows that Shapley was sent to the Nevada State Prison (Max) in Carson City in late June, 1976, to begin serving the first of his five consecutive ten year sentences. He had served and been paroled on three of the sentences at the time this action was filed and was serving the fourth.

Shapley claims that he was delayed on parole on each of his first three sentences because his statutory good time credits were incorrectly calculated. He asserts that where he was to serve two or more consecutive sentences, the aggregate total of the sentences should have been the basis for computation of good time credits, pursuant to 18 U.S.C. § 4161 and a liberal interpretation of NRS 209.443, which would have extended the reasoning of *Biffath v. Warden,* 95 Nev. 260, 593 P.2d 51 (1979) (an enhanced sentence is an additional pen-

alty for one offense and therefore, should be combined with the penalty for the primary offense for purposes of computing good time credits) to his case. Respondents argue that Shapley's good time credits were correctly calculated pursuant to NRS 209.443 on the basis of five separate sentences of ten years each with the computation starting anew at the beginning of each sentence period. It is not in dispute that Shapley's good time credits were calculated in the latter manner.

■ Shapley's reliance on 18 U.S.C. § 4161, which provides for the aggregation of consecutive sentences to arrive at a basis upon which to compute the deduction for good time credits under federal law, is misplaced. § 4161 is available only to prisoners convicted of federal offenses and Shapley was imprisoned for violation of a state statute.

■ Shapley's contention that this Court should construe NRS 209.443 differently from the way it was construed by the state district court is without merit. NRS 209.-443 provides that a peaceable and orderly prisoner who commits no serious infractions of the regulations, must be allowed a deduction for the period of time he is incarcerated amounting to:

2 months for each of the first two years;

4 months for each of the next two years; and

5 months for each of the remaining years;

"and so on through as many years as may be the term of the sentence."

"The 'total good time made' must be deducted from the maximum term imposed by the sentence," the statute continues, and Shapley argues that, in the case of his five consecutive ten year sentences, the "term of the sentence" and the "term imposed by the sentence" should constitute one continuous term of 50 years imprisonment. The rule of *Biffath, supra,* holds that a primary sentence and an additional consecutive enhancement penalty are for *one offense* and, therefore, should be combined for the purpose of computing good

time credits pursuant to NRS 209.443. The state district court found that *Biffath* was clearly distinguishable from the present case because each of Shapley's sentences arose from a *separate and distinct criminal offense* and, therefore, each sentence was separate under NRS 209.443. We agree.

■ In addition, we find that this is a case of administrative interpretation and application of a Nevada statute by a branch of state government and that no federal question is presented where Shapley does not state facts showing that he was treated differently from others in a similar situation. The evidence shows that all prisoners in the Nevada State Prison who are serving consecutive sentences for separate offenses have their good time credits calculated in the same manner as were Shapley's with each sentence treated as a separate entity for this purpose. Shapley's equal protection claim therefore fails. *See Sturm v. California Adult Authority,* 395 F.2d 446, 448–49 (9th Cir.1967) (per curiam), *cert. denied,* 395 U.S. 947, 89 S.Ct. 2021, 23 LEd.2d 466 (1969) (statutory provisions empowering state agency to determine sentences raise no federal question, for such matters are determined by the state).

A further review of the record shows that when Shapley first arrived at Max in June, 1976, he was offered a prison job but refused, saying that he wanted time to pursue his appeal. In December, 1976, Shapley was assigned by the prison Classification Committee to "cellhouse utility," a prison job position requiring some light physical activity. In May, 1978, while working at this job assignment, Shapley fell and injured his knee. He asked for and received medical attention for his knee which culminated in arthoroscopic surgery on the knee on March 25, 1983.

On June 29, 1978, following the injury to his knee, Shapley requested that he be "medically unassigned" by the prison Classification Committee and the request was granted. "Medically unassigned" according to testimony means that the prisoner is

unable to perform some assigned job function within the prison system, due to a medical disability or handicap. According to prison authorities, a doctor does not have to certify a prisoner as medically unassignable and a prisoner may be so classified on his own request. While the request is seldom denied, the authorities state that Shapley was not encouraged to seek this status because he would lose eligibility for additional work/study time credits while he was unassigned and not working at a prison job.

Testimony at the state habeas hearing shows that, even though medically unassigned since June, 1978, Shapley has been able to walk daily to the culinary from his cellblock, walk to the visiting section and visit the law library on almost a daily basis. From March 29 through April 2, 1982, he helped move the law library and shelve the books. The state court, therefore, found him capable of doing light work.

Since June, 1978, Shapley has not held a prison job assignment although he was offered jobs in May, 1981, January 12, 1982, and November 22, 1982, according to testimony at the state habeas hearing. Instead, Shapley has pursued hobbycraft leatherwork in his cell although it is not clear from the evidence exactly what this hobbycraft involves.

 Work/study time credits are discretionary with the prison authorities and are awarded in addition to the time credits for good behavior. NRS 209.443(3) allows the Board of Prison Commissioners to adopt regulations "allowing credits for offenders whose diligence in labor or study merits such credits..." Prison Procedure No. 344 was developed to permit inmates who are handicapped and disabled to earn work/study credits "to the same extent that such credits are available to all other inmates." Handicapped and disabled inmates are defined as those who have "been certified to have a physical, mental or emotional disability by a rehabilitation counselor working in conjunction with other treatment team members (i.e., physician, psychologist, dentist, etc.)" Credits of up to ten days per month are allowed to a prisoner "based upon the amount of time he/she actually participates in an approved rehab program." Thus, the process of granting additional work/study credits under Procedure No. 344 is not automatic and the Classification Committee, vocational rehabilitation counselor or other prison counselor has the discretion and the authority to determine the actual number of days (up to ten per month) each prisoner will be awarded.

 In Shapley's case, no vocational rehabilitation program was available at Max, and Shapley did not ask to have his counselor certify his hobbycraft leatherwork as rehabilitative under the Procedure No. 344 program. Nor did he ask the Classification Committee to determine if he were eligible to earn time credits for a work/study program in lieu of a prison job assignment. In addition, on three occasions Shapley refused an offer to transfer to the Northern Nevada Correctional Center (NNCC), a medium security facility where vocational rehabilitative programs offering additional time credits were available. Testimony at the state habeas hearing revealed that "medically unassigned" is not necessarily synonomous with eligibility under Procedure No. 344. Prison authorities testified that had Shapley so requested, they would have employed a reasonable substitute to the vocational rehabilitation program to determine whether Shapley's hobbycraft activities qualified him for additional credits or whether he was capable of light work or study. Shapley did make one preliminary request but fails to state facts showing any followup on his part or that his physical disabilities were such that he should have been declared eligible for the alternative program. His bare conclusions that his particular hobbycraft qualified him for the alternative work/study time credits is insufficient. Further, Shapley fails to state facts showing that, had he been eligible for such a program, he would have performed so well that he would have received the maximum number of available credits per month. This Court will not presume the

existence of facts not affirmatively presented to it.

For all of the above reasons, Shapley fails to sustain his burden of presenting some significant probative evidence tending to support his petition. *See Compton v. Ide*, 732 F.2d at 1434. Where he does not do so, summary judgment against him is appropriate. Fed.R.Civ.P. 56(c). In addition, his petition for habeas corpus on either of the grounds stated is without merit.

IT IS, THEREFORE, HEREBY ORDERED that the motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that the petition for habeas corpus is DENIED.