UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert E. TUCKER,
Defendant-Appellant.

No. 79–1657.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1982.

Decided Sept. 7, 1983.

As Corrected Sept. 30, 1983.

Warren P. Reese, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Warren P. Reese, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Richard Barnett, San Diego, Cal., for defendant-appellant.

Before ELY, SNEED, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Following a jury trial, appellant Robert Tucker was convicted of conspiracy to defraud the United States and of making false income tax returns in connection with a scheme to overcharge the Department of the Navy for items manufactured by Tucker's employer, Sells Engineering. Tucker contends that he was incompetently represented at trial by his retained counsel, and that as a result he was denied a fair trial. We agree.

After sentencing, Tucker moved for a new trial on the ground that his retained counsel, Karl Keating, had ineffectively represented him at trial. The district court appointed new counsel for Tucker. An evidentiary hearing was held regarding the competency of Keating's representation. At the hearing, Keating was examined extensively about his trial preparation and trial strategy.[1] Expert testimony was also presented regarding the minimum acceptable trial preparation required in a case of this magnitude.

Tucker's present counsel requested leave to conduct an investigation to determine whether Tucker had been prejudiced by Keating's incompetence. The trial court refused his request.[2] The trial court denied Tucker's motion for a new trial, finding that even if Keating's representation had been incompetent, Tucker had not been denied a fair trial.

This court, in an unpublished disposition remanded this matter to the trial court for specific findings as to whether Tucker's counsel had been incompetent, and, if so, whether Tucker had been prejudiced by such ineffectiveness. On remand, the trial court made extensive findings of fact regarding Keating's qualifications, his trial preparation, and his trial performance.

---

1. The district court specifically found that of 2,539 pages of transcribed testimony in the government's case-in-chief, 2,389 pages were devoted to direct examination while 150 pages were devoted to cross examination by Keating. *Findings of Fact and Conclusions of Law, Part III,* Finding No. 1, p. 8 (hereinafter *Findings*).

2. The court stated:

[A]s I see it, that would simply be retrying the case and heck, if I'm going to do that, I may as well simply do what we said, just simply request the circuit court to remand the case.... Because at some point in time there has to be a conclusion to this thing.... Record of Post Trial Hearing 355–6 [hereinafter *RH*]

The district court concluded that, while Keating had performed incompetently, Tucker had not been prejudiced by his attorney's errors and omissions.

## INCOMPETENCE OF COUNSEL

Tucker alleges that Keating conducted his defense in a totally incompetent manner and that such incompetence prejudiced his defense. Tucker claims that Keating's representation was incompetent in at least eight respects:[3]

1. At the time he was retained, Keating was completely unqualified to handle a federal criminal jury trial, and took no steps to remedy his shortcomings prior to trial.[4]

2. Keating failed to consult adequately with Tucker prior to trial. He failed to forward any of the discovery in the case to Tucker and he did not obtain relevant information in Tucker's possession which would have assisted the preparation of the defense.

3. Keating did not interview a single government witness prior to trial although Tucker informed him that some of them could corroborate his proposed testimony.

4. Keating failed to conduct any other form of pre-trial investigation in the case.

5. Keating failed to keep Tucker adequately apprised of his pretrial preparation.

6. Keating failed to conduct an adequate review of the government's documentary evidence including critical statements and affidavits given to prosecutors by prospective witnesses.

7. At trial, Keating failed to impeach any of the government's witnesses with prior inconsistent statements.

8. Keating failed to object to the admission of any of the government's documentary evidence, failed to object to a single question asked by government prosecutors, and failed to make a single motion. In particular, Keating incompetently failed to seek suppression of statements given by Tucker to the IRS.

Tucker's allegations, and the trial court's implied findings of incompetence are amply supported by the record before us. Moreover, Keating's incompetence was sufficiently serious to have prejudiced Tucker's right to a fair trial. Under the standards adopted in this circuit concerning the defendant's right to competent representation under the sixth amendment, Tucker's conviction must be reversed.

▮▮▮ The Ninth Circuit, in the landmark case of *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir.1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979), set out the minimum level of competence required of an attorney by the sixth amendment. We held in *Cooper v. Fitzharris* that the Constitution requires that a defendant receive "reasonably competent and effective representation". *Id.* at 1328. The representation of an accused must be within the range of competence generally demanded of attorneys in criminal cases. *Id.* at 1329. In *Cooper,* this court declined

---

**3.** Appellant claims that Keating's representation was deficient in a number of other respects as well. Because we find that Keating's incompetence in the areas enumerated requires reversal of Tucker's conviction, we need not address appellant's other contentions.

**4.** The district court specifically found as of the date of Tucker's trial, Keating (a) had never handled any federal case; (b) had never handled any state felony matter; (c) had never tried a jury trial; and (d) his sole experience in criminal law consisted of pleading his clients guilty in two drunk driving cases. In fact, it is questionable whether Keating had ever tried a contested case. See RH: 268–9. The court also made the following findings:

> *Finding No. 2*
> Retained trial counsel did not possess the learning and skill ordinarily possessed by at-

torneys in this area in good standing who perform, but do not specialize in, similar criminal federal cases.

> *Finding No. 3*
> Retained trial counsel neither qualified for, nor did he take the necessary steps to qualify for appointment to indigent criminal cases in the United States District Court for the Southern District of California.

> *Finding No. 4*
> Retained trial counsel failed to associate or professionally consult with any other lawyers who he believed possessed the requisite learning or skill regarding the preparation for, and trial of, this case.

*Findings,* Part I, Findings 1–4, pp. 3–4.

to adopt a particularized checklist of minimum standards which counsel must meet in representing a defendant in a criminal proceeding, noting that it would be unwise "to restrict the constitutional requirements to a list of essential elements applicable to all of the infinite variety of factual settings that arise." *Id.* at 1330. We also made clear that the Constitution does not guarantee representation that is infallible. For a sixth amendment violation to be found:

> defense counsel's errors or omissions must reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent criminal defense attorney— they must be errors a reasonably competent attorney acting as a diligent conscientious advocate would not have made, for that is the constitutional standard.

*Id.* at 1330.[5]

The District Court appears to have concluded that Keating's representation of Tucker was incompetent. The district court found as follows:

> Retained trial counsel in terms of his basic professional experience prior to the commencement of this trial was unqualified to represent the defendant Robert E. Tucker. He failed to take steps to properly familiarize himself with federal trial procedure, he was inexperienced as a trial lawyer and his lack of skill and learning contributed to his preparedness or lack thereof at time of trial.[6]

There is ample support in the record before us for the court's conclusion. Because the nature and extent of Keating's errors and omissions has a substantial bearing on the question of whether Tucker was prejudiced by that incompetence, we review Keating's most serious shortcomings in some detail.

*Keating's Trial Preparation*

Defense counsel should have discerned from both the indictment and the government documents made available to him that the jury's determination as to Tucker's guilt or innocence would depend in large part on the testimony and credibility of the government's witnesses. At least two key witnesses for the government had agreed to implicate Tucker directly in the fraud, and the government had constructed a substantial circumstantial case to corroborate its testimony.

Short of proof of insanity, Tucker's only plausible theory of defense was readily apparent. He had to convince the jury that he was an outsider to the corporate hierarchy of Sells Engineering, unaware of the fraud others were perpetrating. To raise a reasonable doubt, it must have been proved that there were innocent alternative explanations for the circumstantial evidence presented by the government which implicated him in the fraud. Therefore, it was crucial for Tucker both to undermine the credibility of the chief government witnesses and to establish the plausibility of his own testimony. There were a number of ways this defense could have been developed based upon information available to defense counsel before trial. The credibility of the principal prosecution witnesses who were to implicate Tucker in the fraud was subject to question. They had all participated in the fraud to varying degrees. Each had given prior statements under oath which raised substantial questions as to his credibility and one had struck a plea bargain with the prosecutor in exchange for his testimony.[7] Moreover, a number of the other witnesses called by the government had also given statements to prosecutors which were less supportive of the government's case than the testimony they gave at trial.[8] These prior statements at the very

---

**5.** The standard is the same for both retained and appointed counsel. *See Cuyler v. Sullivan,* 446 U.S. 335, 344–45, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980).

**6.** *Findings,* Conclusion of Law No. 3, pp. 14–15. *See also infra* note 23.

**7.** In exchange for Teerlink's testimony, the government agreed to make "a full and fair

presentation to the court of the scope and value of Mr. Teerlink's cooperation" at the time of sentencing.

**8.** For example, at trial Ed Spurr had testified that Tucker had ordered him to use government contract and work order numbers on purchase orders for materials unrelated to the chaff dispenser, claiming that Tucker had as-

least raised serious questions about the reliability of the witnesses' recollections as to events which had occurred eight years before trial.

Finally, Tucker was the most obvious source of leads as to corroborative witnesses and information. Indeed, Tucker gave his attorney the names of witnesses who could either corroborate his testimony, or at least counter or minimize the inculpatory inferences which could be drawn from the circumstantial evidence presented by the government. None were interviewed by counsel.[9] Furthermore, prior to trial what communication there was between Tucker and Keating was by telephone. During the entire period before trial, Tucker was in St. Louis while, Keating, along with potential defense witnesses and documentary evidence, was in California.

We recognize that the actual task of competently fashioning a defense to a case of this complexity was a substantial one. The government had indicated that it intended to call approximately 80 witnesses in its case in chief and to introduce what it described as "voluminous" documentary evidence. The pretrial discovery material made available for Keating's review involved at least 13,000 pages, encompassing approximately 3,800 separate documents. Among the documents included in the pretrial discovery material were over 3,000 pages of sworn testimony by prospective witnesses, which obviously had to be studied carefully. Thus, the time required for interviewing witnesses and reviewing pertinent documents was enormous. Moreover, the indictment involved six counts for violations of two different statutes, including 26 U.S.C. § 7206 which an expert witness described as "a complex piece of legislation which requires a detailed analysis factually, and additionally, requires the aid of some type of expert...."[10] We believe that it should have been obvious to a competent lawyer that the assistance of an accountant would be necessary to trace the distribution of the funds alleged to have been illegally spent.[11]

■ Pretrial investigation and preparation are the keys to effective representation of counsel. *Rummell v. Estelle,* 590 F.2d 103, 104 (5th Cir.1979). Courts have repeatedly stressed the importance of adequate consultation between attorney and client, the interviewing of important witnesses, and adequate investigation of potential defenses. *See, e.g., Goodwin v. Balkcom,* 684 F.2d 794, 804–05 (11th Cir.1982); *United States v. Porterfield,* 624 F.2d 122, 124, (10th Cir.1980); *See Wood v. Zahradnick,* 578 F.2d 980, 982 (4th Cir.1978). Mr. Keating performed none of these essential tasks competently.

## CLIENT CONSULTATION

■ Adequate consultation between attorney and client is an essential element of competent representation of a criminal defendant. *Coles v. Peyton,* 389 F.2d 224, 225–26 (4th Cir.1968), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968); *See also Adams v. Balkcom,* 688 F.2d 734, 738 (11th Cir.1982); *United States v. Porterfield,* 624 F.2d at 124. While the amount of consultation required will depend on the

---

sured him that the purchases for other companies of Witte and Sells were loans and that the accounting department would handle the problem. In an earlier statement to the IRS, however, Spurr had "guessed" that Tucker had directed him to use government numbers for materials unrelated to the chaff dispenser. He also asserted that there was nothing wrong with the practice of using those numbers because "accounting takes care of all that stuff."

**9.** *See infra* note 19.

**10.** RH: 230. Section 7206 was so described by Mr. John A. Mitchell who was called as an expert witness at the post-trial hearing on competence of counsel. Mr. Mitchell, a certified criminal law specialist, had prosecuted criminal cases, including "many" income tax fraud cases, for the U.S. Attorneys Office during 1962–68. In his private practice, Mitchell had defended numerous fraud cases in federal court and has lectured in the area of fraud defenses.

**11.** Mitchell testified that a case involving § 7206 requires the aid of a certified public accountant in order to analyze the tax returns in question, and to trace entries in the books of the corporation in question. RH: 230, 250–58.

facts of each case, the consultation should be sufficient to determine all legally relevant information known to the defendant.[12]

Given the nature of the government's case against Tucker, the necessity for extensive consultation between Keating and Tucker was obvious. Tucker was familiar with a number of the witnesses to be called by the government and could provide information as to who they were and what their testimony might be. Tucker had some familiarity with the documentary evidence since he himself had provided a portion of it to government investigators, and a number of the documents involved transactions in which he had been directly involved. Tucker's familiarity with the facts set forth in the statements and affidavits given to government investigators by the prosecutor's witnesses should have been explored. Tucker may well have been able to provide insight into their accuracy and veracity. Communication with Tucker was also essential to prepare his trial testimony and to obtain information as to the most likely sources of witnesses and physical evidence which could corroborate his testimony.

Given these facts, Keating's consultation with Tucker was totally inadequate. During the entire pendency of the case, Keating had no more than 7 hours of telephone conversations with Tucker; from those seven hours Keating could produce but a single note which read "Pods [the chaff dispenser] to Israel, fees, and Judge Thompson."

Since Keating had no notes of his substantive conversations with Tucker, Keating could not recall in any detail what aspects of the case he had discussed with Tucker. However, it appears that a substantial amount of time was taken up with discussion of the government's plea bargain offer and with discussions of Keating's fees.[13] By his own admission, Keating spent no more than 20 hours discussing the case with Tucker. Virtually *none* of the government's massive documentary evidence or the statements given by prospective witnesses were discussed with Tucker. Keating did not forward a single page of the material disclosed by the government for review by the defense.[14] As a result, any advice Tucker might have been able to offer his attorney as to the possible use of those statements in his own defense was lost.

Two weeks before trial, the government informed Keating that John Cook, a prosecution witness, had just given a statement accusing Tucker of ordering Cook to "kick back" half of his travel expense money to Tucker. Keating did not discuss this new and potentially damaging development with Tucker until the weekend before trial.[15]

■ Keating did not compensate for his inadequate consultation with Tucker by conducting a thorough pre-trial investigation. In fact, Keating did not undertake

---

12. The American Bar Association Standards for Criminal Justice, are in accord. In the chapter entitled "The Defense Function," they provide in relevant part:
§ 4–3.2 Interviewing the client
as soon as practicable the lawyer should seek to determine all relevant facts known to the accused. In so doing, the lawyer should probe for all legally relevant information without seeking to influence the direction of the client's responses.

13. RH: 59–63.

14. RH: 56–63. This material was available for photocopying shortly after the indictment was returned. In a letter dated Nov. 14, 1978, Keating advised Tucker as follows:
Reese [the U.S. attorney] has suggested that his office supply us with photocopies of

everything, but that will cost us around $1000. He would arrange the material in book form for us, and that would be quite helpful at trial, but I just don't know if we can swing the cost.
At the time this letter was written, Keating had over $2300 in Tucker's client trust account. Keating testified that he was simply reluctant to pay the $1,000 cost, however, because he felt Tucker was being too slow in his payments and he wanted him to come up with more money. RH: 55–58.

15. The prosecutor commented specifically on the fact that Keating's opening statement concerning Cook's charges differed significantly from Tucker's trial testimony about them. RT: 3432–35.

any pretrial investigation.[16] Keating did not interview nor attempt to interview, nor did he request anyone acting on his behalf to interview a *single* government witness prior to trial because he felt "there was no need to." [17]

It is difficult to see how Keating could make an informed assessment of the strengths and weaknesses of the government's case without attempting to ascertain specifically what the testimony of the government's witnesses would be. In general, Keating's ability to cross-examine the government's witnesses effectively was seriously compromised by his failure to interview them, since he would have little idea as to the specific areas of testimony which could be challenged.[18] Keating's failure to interview these witnesses, given the circumstances of the case, was clearly incompetent.

Moreover, Keating's failure to identify or interview witnesses who might be able to corroborate Tucker's testimony made it impossible for the jury to make an independent judgment as to whether there was a reasonable doubt regarding Tucker's guilt. Since Keating did not adequately interview either his own client or any prospective witnesses, corroboration for Tucker's defense was never developed. Keating conceded that Tucker had given him the names of witnesses who could corroborate portions of Tucker's testimony.[19] "The most able and competent lawyer in the world can not [sic] render effective assistance in the defense of his client if his lack of preparation for trial results in his failure to learn of readily available facts which might have afforded his client a legitimate justiciable defense." *McQueen v. Swenson,* 498 F.2d 207, 217 (8th Cir.1974), *quoting Goodwin v. Swenson,* 287 F.Supp. 166, 182–3 (W.D.Mo. 1968). The absence of any corroboration for Tucker's testimony was repeatedly underscored and exploited by the prosecutor in his closing argument:

> Bear in mind the only witness, really the only witness, was Mr. Tucker. There was no corroboration presented in support of his contentions. There was no significant cross-examination of any government witness to develop any points. There was no direct testimony given from any witness ... except Mr. Tucker, and I suggest the reason for that was there was no evidence that could be presented truthfully from any witness which would support Mr. Tucker's claims in this case. RT: 3411 [20]

---

**16.** The right to reasonably competent counsel imposes a correlative duty on defense counsel to undertake reasonable steps to investigate all avenues of defense. *Wood v. Zahradnick,* 578 F.2d 980, 982 (4th Cir.1978). The principle is so fundamental that the failure to conduct a reasonable pretrial investigation may in itself amount to ineffective assistance of counsel. *See McQueen v. Swenson,* 498 F.2d 207, 217–18 (8th Cir.1974).

**17.** The cases repeatedly stress the importance of interviewing witnesses to the preparation of a defense. *See, e.g., Ford v. Parratt,* 638 F.2d 1115, 1117 (8th Cir.), *vacated on other grounds,* 454 U.S. 934, 102 S.Ct. 467, 70 L.Ed.2d 242 (1981): "ordinarily a reasonably competent attorney will conduct an in-depth investigation of the case, which includes an independent interviewing of the witnesses. (citation omitted)." *Accord, McQueen v. Swenson,* 498 F.2d at 216; *Moore v. United States,* 432 F.2d 730, 739 (3rd Cir.1970).

**18.** *See* Commentary to § 4.4.1 of the A.B.A. Standards:

> Effective investigation by the lawyer has an important bearing on competent representation at trial, for without adequate investigation the lawyer is not in a position to make the best use of such mechanisms as cross-examination or impeachment of adverse witnesses at trial. . . .

**19.** The following testimony was elicited at the post trial hearing:

> Q: Didn't he [Tucker] often tell you to confirm information with Atha or Cook or Serle [sic] or Spurr or any number of people at Sells Engineering?
> A: He might have mentioned particular facts and say [sic] that Spurr could confirm this thing, and in fact I would not be informed by Spurr, because I read his statement and it was right there. . . . RH: 78–79.

**20.** The prosecutor also said in closing argument:

> . . . The prosecution asks you to examine the evidence that's been presented and the defense asks you, essentially, to ignore it, and to believe the defendant, the witness who

The prosecutor's argument eloquently emphasized the importance of corroboration to Tucker's defense. Keating's failure to interview any of the witnesses who would have corroborated his defense clearly demonstrates a total absence of diligent and conscientious advocacy.[21]

Keating also failed to make a thorough examination of the documentary evidence in the case. The record reflects that Keating spent approximately eleven hours reviewing the 13,000 pages of discovery in the case, including 3000 pages of sworn statements and affidavits of key government witnesses. Before the documents in the case were turned over to Keating, he spent four hours reviewing them at the federal courthouse. During that time he reviewed statements given by two of the government's witnesses. He also spent 7½ hours with government prosecutors, in order to determine whether the government's exhibits were admissible. While Keating claimed that he had spent many additional hours reviewing the discovered documents after he received them, the only notes he could produce of his examination referred to the material he had reviewed in the federal courthouse. Moreover, after conceding that he billed Tucker fairly accurately for his review of the government's documents [22] he admitted that he had not billed his client for such an examination after the date these materials had been made available to him. From this record, we can only conclude that Keating did not conduct an adequate review of most of the documentary evidence, including crucial statements and affidavits given by many of the key government witnesses. He was therefore completely unprepared to question those witnesses particularly when their trial testimony differed in any significant respect from their prior statements—no matter how favorable to Tucker or how damaging to the witness' credibility such statements might be. Failure to explore or fully exploit such an important avenue of defense was clearly incompetent.

■ The government claims that Keating's pretrial investigation was adequate because "[d]ogged exploratory investigation and interviewing of witnesses prior to trial would have been of no avail." The government's unsupported assertions are unconvincing. We realize that the duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed or that counsel must pursue "every path until it bears fruit or until all conceivable hope withers." *Lovett v. Florida,* 627 F.2d 706, 708 (5th Cir.1980). Nor does it necessarily require that counsel pore over every document which the government intended to introduce into evidence. The specific tasks required for adequate preparation of a defense turn on the particular facts and circumstances of each case. *Adams v. Balkcom,* 688 F.2d at 740; *Nelson v. Estelle,* 642 F.2d 903, 906 (5th Cir.1981).

In this case, however, Keating failed to prepare his client's defense competently under the most tolerant standard of evaluation. He failed to obtain legally relevant facts from his client; he failed to pursue obvious leads provided by his client, and failed completely to garner corroborating evidence for his client's testimony. He failed to interview or attempt to interview key witnesses, and his review of the trial exhibits made available by the government was inadequate. Under these circumstances, it can hardly be claimed that his preparation of Tucker's defense was adequate.[23]

---

was essentially uncorroborated.... RT: 3378.

**21.** As the court stated in *McQueen v. Swenson:* "Yet it is precisely in such circumstances as these ... that outside investigation is absolutely crucial. In no other fashion can the truth of the defendant's version of events be corroborated." 498 F.2d at 217.

**22.** Q: This [discovery review] is the type of thing you felt you should bill your client for, right?
A: Not all of it, no ....
Q: Certainly a fair amount of it—
A: Sure.
RH: 27–28.

**23.** At the hearing on appellant's motion for a new trial, the district court said:

## KEATING'S TRIAL PERFORMANCE

 Keating's failure to investigate and otherwise adequately prepare Tucker's defense had predictable consequences at trial. First, as the government prosecutor noted in his closing argument, there was no significant cross-examination of any of the government's witnesses. Secondly, through 21 days of testimony that was rife with leading questions, hearsay statements, and conclusory responses, Keating raised but a single objection to questions asked by the prosecution,[24] and he failed to move to strike any response given by any witness.[25] Mr. Keating's incompetence in this regard was so complete that the government prosecutor himself had to move on three separate occasions to strike the responses of one of his own witnesses.[26]

Keating did not object to the admission of any of the documents introduced by the prosecution, which is not surprising in light of his failure to conduct an adequate review of most of them. Moreover, Keating failed to object to the admission of the transcript of the statement Tucker had given under the assumption that it would not be used against him. The prosecutor questioned Tucker about the contents of the statement during cross-examination. During his closing argument the prosecutor directed the jury's attention to the apparent discrepancies between the statement and Tucker's testimony.[27]

> There is no doubt but what Mr. Keating ... in my judgment was in over his head. He neither prepared himself for this case nor prepared himself to try a lawsuit in the federal court. By the most meager of standards— and this is the standards we require of our appointed counsel on our civil appointment list. RH: 473–74.

The Judge also said:

> I am not prepared to say unequivocally that Mr. Keating's performance as an attorney was below the acceptable standard. It was below my acceptable standard. It was below my standard and I venture to say, below the acceptable standard of all the judges on this court. RH: 475.

24. We do not intend by this observation to suggest any misconduct on the part of the prosecutor in his questioning of witnesses. In

Keating's most serious dereliction of duty during trial, however, was the failure to utilize any of the prior statements given by government witnesses. As noted earlier, each of the key government witnesses had given statements or affidavits to government investigators which raised questions as to their credibility or which were more supportive of Tucker's theory of defense than the testimony they gave at trial. None of these prior inconsistent statements was brought to the jury's attention. The jury was thus deprived of the opportunity fairly and fully to assess the accuracy of testimony damaging to Tucker, or to determine the honesty of the witnesses who gave that testimony.

Keating's most egregious failure in this regard involved Teerlink who directly implicated Tucker in the fraud. In spite of numerous material discrepancies between Teerlink's prior statements and his trial testimony, Keating did not attempt to impeach Teerlink with a single prior inconsistent statement. The impact of Keating's failure to use available impeaching material to attack Teerlink's veracity was described by the district court as follows:

> Richard Teerlink [was] one of the government's key witnesses. . . . Richard Teerlink committed numerous acts of perjury during the course of his 1975 sworn statement. Trial counsel did not impeach Teerlink with a single prior inconsistent statement during the course of his cross examination of Richard Teerlink. There

general, it is the obligation of opposing counsel to interpose appropriate objections to the form and content of questions, as well as to any objectionable responses to those questions.

25. During the prosecution's questioning of Ruby Thompson, a former bookkeeper at Sells Engineering, Keating objected when the prosecutor inadvertently read the name "Teerlink" on a document as "Tucker." RT: 1504–05.

26. *See, e.g.,* RT: 2390, 2399, 2419.

27. Appellant's present counsel was unable to make an adequate record regarding Keating's failure to suppress Tucker's statement at the hearing on the motion for a new trial because a key corroborative witness was not available. RH: 334–40.

were areas of testimony which although the jury was never aware Teerlink had testified otherwise, nevertheless were relevant not only to the facts of the case, but to the jury's determination of the credibility and truthfulness of Teerlink's testimony.

. . . . .

Given the facts of this case, ... most reasonably competent criminal defense attorneys would have brought at least some, if not all of Mr. Teerlink's prior inconsistent statements, some of which may have been perjurious in nature, to the jury's attention so as to provide them with the opportunity to properly exercise their fact finding function.[28]

The strategic significance of Keating's failure to challenge Teerlink was not lost on the prosecutor. In his closing argument, the prosecutor made the following comments concerning the absence of any attempt to impeach Teerlink's extremely damaging testimony:

Mr. Tucker claims Mr. Teerlink is lying ... *[I]f there were any inconsistencies of significance* to the defendants (sic) between the testimony of Mr. Teerlink on the stand and the statement he originally made before a resolution of the case, then I suggest to you that *the defense would have advised you.* [emphasis added]

RT: 3387, 3389.

■ The government argues that the failure to impeach Teerlink or any other witness was a matter of strategy—a reasonable judgment which Keating made about the value of placing these statements before the jury. Citing *United States v. Decoster,* 487 F.2d 1197 (D.C.Cir.1973), the government tells us that this court should not second guess Keating on matters of strategy even if, with the benefit of a hindsight, his choices appear unwise in light of Keating's lack of experience as a trial attorney. It is difficult for us to attribute such a critical blunder to a strategic choice. Even if we can assume that Keating's fail-

ure to make use of prior inconsistent statements during cross examination was a matter of strategy, this omission is thereby not immune from judicial scrutiny. Certain defense strategies may be so ill-chosen that they may render counsel's overall representation constitutionally defective. As the court in *Beasley v. United States* noted:

Defense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel, if some other action would have better protected a defendant and was reasonably foreseeable as such before trial. [citation omitted]

491 F.2d 687, 696 (6th Cir.1974).

Keating's decision not to utilize any of these prior statements prevented the jury from making an accurate determination as to the truth of Teerlink's testimony. The jury might have concluded, as did the district court, that the government's witness was guilty of "numerous acts of perjury" in his sworn statements. We are satisfied, as was the district court, that a competent lawyer would have recognized the critical importance of using the prior inconsistent statements for impeachment.

■ Our independent review of this record convinces us that Keating's lack of preparation for trial and his strategic blunders and omissions during trial reflected a failure to exercise the skill, judgment, and diligence of a reasonably competent criminal defense attorney.

*The Requirement that Counsel's Incompetency Prejudice the Defense*

In addition to adopting a new definition of incompetency for this circuit, this court, sitting en banc in *Cooper v. Fitzharris, supra,* created a twofold test for judging a claim of ineffective assistance of counsel: "did counsel act in a reasonably competent and effective manner and, if not, was his incompetence prejudicial to the defense?" *Satchell v. Cardwell,* 653 F.2d 408 at 409

---

**28.** *Findings,* Part III, Findings Nos. 2, 3, 4, pp. 8–9 (footnotes omitted); Conclusion of Law

No. 4, p. 15.

(9th Cir.1981). *See also Ewing v. Williams,* 596 F.2d 391, 394 (9th Cir.1979).

We write this opinion in loyal conformity with the teaching of the en banc decision in *Cooper v. Fitzharris.* We recognize that we could not, and we would not, as a panel of this court, undertake to modify an en banc decision of this circuit or adopt the approach of the dissent in *Cooper v. Fitzharris. See Ewing v. Williams, supra* at 397.

The dissent in *Cooper v. Fitzharris* expressed the view that: "[d]efendants who have been denied their Sixth Amendment right to the assistance of reasonably competent counsel at trial should be entitled to relief *without a showing of prejudice.*" (emphasis added). *Id.* at 1334.

A majority of this court, refused to adopt the automatic reversal rule advocated by the dissent. Having concluded that counsel's representation met the requirements of the sixth amendment, the majority in *Cooper v. Fitzharris,* quite properly, left to another day the determination of the allocation of the burden of persuasion and the applicability of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) where ineffectiveness of counsel is demonstrated. Thus, this court neither adopted nor rejected Judge Hufstedler's analysis of this separate constitutional issue. Indeed, the court in *Cooper v. Fitzharris,* did not cite nor discuss *Chapman v. California* or the allocation of the burden of persuasion as to the impact of counsel's incompetence on the integrity of the fact finding process.[29] Those in the majority apparently chose to remain silent until the question was ripe for review. That day has arrived.

Two years ago, in *McNulty v. Olim,* 652 F.2d 1369 (9th Cir.1981), the issue of the applicability of the *Chapman* test was argued before this court. We declined to address the question because this court concluded that counsel's representation was competent. *Id.* at 1371.

In this matter counsel's ineffectiveness has been overwhelmingly demonstrated. Therefore, we cannot avoid confronting the *Chapman* issue.

*Standard of Review of Prejudicial Effect of Counsel's Incompetency*

The fact that we have determined that the record demonstrates that Tucker received incompetent representation does not end our task or automatically compel reversal. In *Cooper v. Fitzharris* we held that "[where] the claim of ineffective assistance of counsel rests upon specific acts and omissions of counsel at trial, ... relief will be granted only if it appears that the defendant was prejudiced by counsel's conduct." 586 F.2d at 1331.

■ The requirement that the accused must establish that counsel's errors and omissions prejudiced the defense "does not mean that relief is available only if the defendant would have been acquitted but for counsel's blunders." *Id.* at 1333. Recognizing that "[t]he guilty as well as the innocent are entitled to a fair trial", the primary inquiry is whether counsel's incompetence impaired his defense, not whether the defendant would have been convicted in spite of those errors.

■ While the question of whether a defendant has been denied a fair trial can only be answered in the context of a particular case, it is clear that a defendant is denied a fair trial where the actions of his or her attorney "precluded the fact-finder from independently judging the merits of the case." *United States v. Campbell,* 616 F.2d 1151, 1152 (9th Cir.1980), *cert. denied,* 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980).

■ This court has not had occasion to adopt the standard by which we determine

---

**29.** There is one enigmatic passage in *Cooper v. Fitzharris* which might be construed as suggesting that the prosecution ultimately bears the burden of persuasion as to the presence of prejudice. We refer to the following language: "absence of prejudice is not established by demonstrating that no single error considered

alone significantly impaired the defense." *Supra* at 1341. Unfortunately this court did not make any further reference to the absence of prejudice. It seems fairly obvious, however, that these words cannot be construed to require the *defendant* to show "the absence of prejudice."

whether counsel's incompetence was harmless because it did not deny an accused a fair trial. As noted above, in *McNulty v. Olim,* 652 F.2d 1369 (9th Cir.1981), we declined to adopt such a standard but "strongly suggest[ed]" that where the errors and omissions of counsel appear on the face of the record and thus can be evaluated with reasonable certainty, "the proper test might well be whether the *absence* of prejudice is established with reasonable certainty." *McNulty, Id.* at 1371 (emphasis added). Thus, under the *McNulty* dictum, it would appear that the court was suggesting that the *government* has the burden of convincing this court to a reasonable certainty that no prejudice occurred as a result of counsel's errors or omissions appearing in the record. We so read *McNulty* because it would be strange, indeed, to interpret this language as requiring *the defendant* to show that "no prejudice occurred to a reasonable certainty."

The rule we suggested but did not adopt in *McNulty* is fully consistent with the requirements of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). There, the Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. at 24, 87 S.Ct. at 828. We are satisfied that we must apply the *Chapman* test in reviewing the impact of incompetence of counsel on a defendant's right to a fair trial.

Since *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) it has been clear that the sixth amendment guarantees to an accused in a criminal proceeding *effective* assistance of counsel. In *Powell,* the Court concluded that the right to counsel is so precious "that it cannot be denied without violating 'those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.'" *Id.* at 67, 53 S.Ct. at 63. (citation omitted).

■ In light of the Supreme Court's decision in *Powell v. Alabama* and *Chapman*

*v. California,* once incompetence of counsel has been demonstrated, we construe it to be our duty to proceed as follows:

One. The defendant must point to errors or omissions in the record on appeal which establish that he did not receive reasonably competent and effective assistance of counsel. *Cooper v. Fitzharris,* 586 F.2d at 1328.

Two. We must affirm if the defendant fails to make this initial showing. *See Hall v. Sumner,* 682 F.2d 786, 789 (where incompetence is not shown, we do not reach the contention that the district court misapplied the *Cooper* prejudice requirement). *Id.* at 789.

Three. If the defendant shows that his representation was ineffective, he has the further burden of showing how counsel's errors and omissions "impaired the defense." *Cooper v. Fitzharris, supra* at 1333. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1963). *Cf. Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). *See also United States v. Hinton,* 631 F.2d 769, 771 (D.C.Cir.1980).

Four. If the defendant fails to meet his initial burden of establishing that he was prejudiced by counsel's incompetency we must affirm. *See United States v. Altamarino,* 633 F.2d 147 (9th Cir.1980) (counsel's unprofessional conduct was found to be incompetent representation but defendant failed to show prejudice).

Five. If the defendant meets his initial burden by "pleading the inadequacies of counsel's performance and how they prejudice the accused," *Cooper v. Fitzharris, supra* at 1329, the government must bear the burden of persuading this court beyond a reasonable doubt that counsel's errors and omissions did not deny the accused a fair trial. *See Wood v. Zahradnick,* 578 F.2d 980, 982 (4th Cir.1978). *See also Washington v. Strickland,* 693 F.2d 1243, 1258 (5th Cir.1982) (en banc).

In *Fahy v. Connecticut,* the Supreme Court in considering the effect on the jury of the erroneous admission of evidence, stated: "We are not concerned here with

whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 375 U.S. at 86–87, 84 S.Ct. at 230. Similarly, we held, in *Cooper v. Fitzharris,* that where it is demonstrated that counsel was ineffective, we are not concerned with the amount of evidence presented to prove the guilt of the defendant. Instead, we are required to determine whether counsel's errors and omissions may have denied him a fair trial. 586 F.2d at 1333.

A record on appeal does not contain the secret deliberations of the jury nor the unarticulated thoughts of each juror which motivated him to arrive at his verdict. We cannot, therefore, fairly charge a defendant with the responsibility of pointing to *direct* evidence of each juror's state of mind at the time he voted guilty before we can reverse a conviction where incompetence of counsel has been shown.

Before adopting the *Chapman* test to weigh the impact of the prejudice caused by ineffective representation by counsel we first surveyed the rules which have been developed by other courts.

The District of Columbia Circuit allocates the burden of proof between the defense and the prosecution by posing the following questions: (1) "Has the defendant demonstrated a likelihood that counsel's inadequacy prejudiced his defense?" and (2) ". . . Is the government unable to prove beyond a reasonable doubt that the constitutional deficiencies of counsel's representations were harmless?" *United States v. Hinton,* 631 F.2d 769, 771 (D.C.Cir.1980).

In the First and Second Circuits, the defendant must show that he has suffered "actual" prejudice from counsel's ineffectiveness to secure a reversal of his conviction. *United States v. Campa,* 679 F.2d 1006, 1014 (1st Cir.1982); *United States v. Aulet,* 618 F.2d 182, 188 (2d Cir.1980).

The Third Circuit varies the burden of proof according to the nature and quantum of counsel's errors and omissions. If, for example, counsel's incompetent acts make it impossible to determine whether the defendant was prejudiced because of the failure to call a witness who is now dead, "a finding of departure from the standard of normal competence requires without more, a new trial." *United States ex rel. Green v. Rundle,* 434 F.2d 1112, 1115 (3rd Cir.1970).

In such cases "any substantial doubt must be resolved in favor of the defendant, inasmuch as *Chapman* permits a finding of harmless error only where it is concluded *beyond a reasonable doubt* that no prejudice resulted from the identified constitutional violation." *United States v. Baynes,* 687 F.2d 659 at 670–71 (3d Cir.1982).

Where counsel's incompetence is not pervasive the accused must "demonstrate prejudice in ineffective assistance situations." *United States v. Baynes,* 687 F.2d at 670. In such situations the defendant need only show that his attorney's acts or omissions "*might* have led to a viable defense and a verdict favorable to [him]," *id.* at 671, (emphasis in original) quoting from *United States v. Baynes,* 622 F.2d 66 at 69 (3rd Cir.1980). Where it is possible to determine if the departure from normal competence was prejudicial, such as the failure to present certain physical evidence, the burden is on the defendant "to show that the missing evidence would have been helpful." *Id.* *See United States ex rel. Johnson v. Johnson,* 531 F.2d 169, 177 (3d Cir.), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976) (petitioner had burden of proving that he was prejudiced by alleged deficiencies in trial counsel's performance). *See also United States Ex Rel. Caruso v. Zelinsky,* 689 F.2d 435, 438 (3d Cir.1982).

In the Fourth Circuit, if the defendant shows that counsel was incompetent by failing to meet certain minimum requirements, the government has the burden of proving that the defendant was not prejudiced thereby. *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir.), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968). In *Wood v. Zahradnick,* 578 F.2d 980 (4th Cir.1978), the court stated that the government must

show the error was harmless beyond a reasonable doubt. *Id.* at 982.

The Fifth Circuit places the burden on a defendant, who was incompetently represented, to show that counsel's ineffectiveness not only created a possibility of prejudice, but that it also worked to his "actual and substantial disadvantage." Upon such a showing the government must show that counsel's ineffectiveness was harmless beyond a reasonable doubt. *Washington v. Strickland,* 693 F.2d 1243, 1258 (5th Cir. 1982) (en banc).

The Sixth Circuit does not require a showing of prejudice once it is shown counsel was ineffective. "Harmless error tests do not apply in regard to the deprivation of a procedural right so fundamental as the effective assistance of counsel." *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974).

The Seventh Circuit has adopted a test which will deny relief to a person represented by ineffective counsel if in spite of counsel's blunders it is still clear beyond a reasonable doubt that the jury would have convicted him. *Wade v. Franzen,* 678 F.2d 56, 59 (7th Cir.1982).

The Eighth Circuit requires that a defendant who is incompetently represented must show that "the action or inaction of the attorney must have materially prejudiced the petitioner's defense." *Tinlin v. Parratt,* 680 F.2d 48, 50 (8th Cir.1982). *See also Speedy v. Wyrick,* 702 F.2d 723, 726 (8th Cir.1983).

Once this showing is made, a new trial is warranted unless the court is able to declare a belief that counsel's omission was harmless beyond a reasonable doubt. *McQueen v. Swenson,* 498 F.2d 207, 220 (8th Cir.1974).

In the Tenth Circuit, if incompetence of counsel is pervasive, a showing of prejudice is not required. Rather "the burden should be on the government to establish the lack of prejudice." *United States v. Porterfield,* 624 F.2d at 124–25 (10th Cir.1980).

Where the record shows that counsel has had *adequate* time to prepare for trial, the record must show "demonstrable prejudice" to his defense. *United States v. Golub,* 694 F.2d 207, 209 (10th Cir.1982). Where counsel has not had adequate time to prepare for trial "the defendant need not show specified errors in the conduct of his defense in order to show ineffectiveness of counsel." *United States v. Cronic,* 675 F.2d 1126, 1128 (10th Cir.1982).

The Eleventh Circuit in *Stanley v. Zant,* 697 F.2d 955 (11th Cir.1983), adopted the test set forth in *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (en banc). As noted above, under *Strickland,* once the defendant has shown that counsel's ineffectiveness "worked to his 'actual and substantial disadvantage'" the government must prove "that counsel's ineffectiveness was harmless beyond a reasonable doubt." *Washington v. Strickland,* 593 F.2d at 1258. *See also Owens v. Wainwright,* 698 F.2d 1111, 1113 (11th Cir.1983).

We can summarize the results of our research into the approach taken by other circuits as follows:

One. The *Chapman* test has been adopted in each circuit where the issue was raised and discussed in connection with a claim of prejudice resulting from incompetency of counsel.

Two. In some circuits proof of prejudice is not required once incompetency of counsel is demonstrated. The *Chapman* test is not relevant in these circuits. These circuits simply refuse to weigh the impact of attorney incompetence on the defendant's right to a fair trial. We rejected this approach in *Cooper v. Fitzharris.*

Three. In other circuits a demonstration of prejudice is not required where an attorney's incompetence is pervasive or where there was inadequate time alloted to prepare for trial.

Four. The remaining circuits, including ours, require the defendant to make an initial showing that counsel's errors and omissions were prejudicial.

Five. Some variation of the *Chapman* test has been considered and adopted in the following circuits which require a showing

of prejudice: the District of Columbia, the Third, Fourth, Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits.

Six. The First and Second Circuits have not yet disclosed the test they would apply in considering the prejudicial effect of counsel's errors and omissions where incompetency of counsel has been demonstrated.

Thus, in applying the Chapman test to the evaluation of the impact of the prejudice caused by counsel's incompetency, we join every circuit which has expressed its view when confronted with this issue.

In setting forth the rule we adopted in *Cooper v. Fitzharris,* which requires the accused to show that his defense was impaired, we have not placed a modifier before the word "prejudice" because this court did not do so in fashioning the law of the circuit.

We recognize that in a few decisions filed shortly after *Cooper v. Fitzharris,* at least one three judge panel of this court stated that a defendant must show "actual" prejudice in an incompetency case. In *United States v. Coupez,* 603 F.2d 1347 (9th Cir. 1979), the court summarized the rule as follows: "However, *Cooper* requires that a showing of a lack of effective representation must be coupled with a factual showing of *actual* prejudice to a defendant's defense because of such defective representation." (emphasis added). *Id.* at 1350.

A careful reading of *Cooper* will reveal that this court did not so require.

We are satisfied that the three-man panel which produced *Coupez* did not purport to rewrite the law for this circuit so recently adopted by this court sitting en banc in *Cooper.* Such a construction of *Coupez* would place that decision in conflict with the rule that an en banc decision of this court can not be modified by a three judge panel. *Ewing v. Williams, supra* at 397. We suspect, that instead of committing such heresy, the court in *Coupez* was simply attempting to paraphrase *Cooper's* holding. Further, in using the adjective "actual" to modify prejudice, the court was undoubtedly emphasizing that *Cooper* requires a showing of real and not imagined prejudice. Our interpretation of *Coupez* is bolstered by the fact that the court concluded its discussion of the subject of defective representation by stating: "Furthermore, the record is devoid of any factual showing of prejudice to Coupez' defense by reason of the District Court's rulings." *Id.* at 1351.

*Coupez* has never been cited in the Ninth Circuit as setting forth a heightened quantum of proof beyond that set forth in *Cooper.* The Seventh Circuit has, however, cited *Coupez* for the proposition that it will not reverse where "the defendant has shown no prejudice from his counsel's failure." *United States v. Raineri,* 670 F.2d 702 at 712 (7th Cir.1982).[30]

**30.** In *Brown v. United States,* 665 F.2d 271 (9th Cir.1982), this court held that where an attorney has a conflict of interest arising out of dual representation, the weight of the evidence against the accused "cannot, of itself, justify the denial of relief under § 2255 once there has been a finding of actual conflict of interest..." In a concurring opinion, Judge Tang distinguished the test which must be applied in a conflict of interest case from that which is required where incompetency of counsel has been proved. In so doing Judge Tang referred to the "'actual prejudice' test of *Cooper v. Fitzharris.*" 586 F.2d 1325 (9th Cir.1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979)." Judge Tang did not provide a page citation for the words he placed in quotes. We cannot find any reference to "actual" prejudice in *Cooper v. Fitzharris.*

In *United States v. Hearst,* 638 F.2d 1190 (9th Cir.1980), this court determined that the dis-

trict court erred in denying the accused a hearing on her claim in her section 2255 petition that her retained counsel's conflict of interest violated her Sixth Amendment right to the assistance of counsel. As in *Brown* this court distinguished the test which must apply where a conflict of interest is raised from the rule applicable in incompetency cases. In passing, the opinion states that *Cooper v. Fitzharris* requires "that the petitioner show that counsel's incompetent assistance resulted in actual prejudice." *Id.* at 1194. This shorthand paraphrase of *Cooper* requirements was clearly not intended to be construed as creating a new rule spelling out the "quantum of proof necessary to demonstrate the existence of prejudice" in an incompetency of counsel case.

It is also true that in *United States v. Winston,* 613 F.2d 221, 224 (9th Cir.1980) and in *Lewis v. Cardwell,* 609 F.2d 926, 928–29 (9th Cir.1979) this court stated that these appellants

We are also aware that other circuits have chosen to modify the term "prejudice" in their formulation of the rule they apply where ineffectiveness has been shown. Even if we had the power to change the *Cooper* prejudice test, we see no grammatical justification for doing so. Adding the words "actual" or "substantial" is rhetorical surplusage. If we are persuaded that prejudice to the defense has been shown as the result of counsel's errors and omissions we must reverse. While it is true that constitutional error may be non-prejudicial, there is no such thing as harmless prejudice.

Our independent review of the record in this case convinces us that counsel's errors and opinions were prejudicial and deprived Tucker of a fair trial.

The district court concluded that despite Keating's incompetence, Tucker was not denied a fair trial. The trial judge found:

Here, the defendant was not prejudiced by any of the asserted errors or omissions complained of but rather received a fair, although perhaps not perfect trial. The court bases its conclusion on its determination that no matter who represented the defendant, nor his level of competency, defendant nevertheless would have been convicted by a jury of the charges in the indictment, *due to the overwhelming evidence of guilt presented during the course of the trial.* The jury chose not to believe Tucker's explanatory testimony upon which he and his retained counsel based their defense.

. . . . .

A new trial is not required where counsel's lack of preparedness or results in the failure to utilize possible impeachment evidence in cross examination of a prosecution witness, *and particularly in view of the overwhelming evidence of Tucker's guilt herein.*[31] [Emphasis added]

■ Whether a defendant has been prejudiced by counsel's ineffectiveness is a question of law and is reviewable as such. While we defer to the district court's factual findings as to what counsel did or did not do, we independently evaluate whether counsel's representation prejudiced the defendant. *Adams v. Balkcom,* 688 F.2d 734, 739 (11th Cir.1982). In our view the district court incorrectly concluded that Tucker was not prejudiced by Keating's incompetence. The district court's conclusion that prejudice has not been shown was at least in part based on its determination that the evidence of guilt was overwhelming. In *Cooper v. Fitzharris* we rejected the quantum of the evidence of guilt as a measure of prejudice. We chose instead to require reversal if counsel's incompetency denied an accused a fair trial. 586 F.2d at 1333.

---

had failed to demonstrate "substantial prejudice." We are satisfied that in each case this court was merely summarizing the holding in *Cooper* without intending to create a new standard to measure the quantum of proof of prejudice.

In every other case from this Circuit which considered the issue of competency of counsel, this court has not read *Cooper v. Fitzharris* as requiring a showing of "actual" or "substantial" prejudice. *See United States v. Coleman,* 707 F.2d 374, 376 (9th Cir.1983); *United States v. Christopher,* 700 F.2d 1253, 1261 (9th Cir. 1983); *Baumann v. United States,* 692 F.2d 565, 572 (9th Cir.1982); *United States v. Gibson,* 690 F.2d 697, 704 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1446, 75 L.Ed.2d 801 (1983); *Hudson v. Rushen,* 686 F.2d 826, 832 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1886, 1896, 77 L.Ed.2d 285 (1983); *Hall v. Sumner,* 682 F.2d 786, 787 (9th Cir.1982); *Fritchie v. McCarthy,* 664 F.2d 208, 214 (9th Cir. 1981); *United States v. Donn,* 661 F.2d 820, 824 (9th Cir.1982) (per curiam); *Hines v. Enomoto,* 658 F.2d 667, 675 (9th Cir.1981); *Satchell v. Cardwell,* 653 F.2d 408, 409 (9th Cir.1981), *cert. denied,* 454 U.S. 1154, 102 S.Ct. 1026, 71 L.Ed.2d 311 (1983); *McNulty v. Olim,* 652 F.2d 1369, 1370–71 (9th Cir.1981); *United States v. Mayo,* 646 F.2d 369, 373 (9th Cir.1981); *United States v. Altamirano,* 633 F.2d 147, 152–53 (9th Cir.1980), *cert. denied,* 454 U.S. 839, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Gustave v. United States,* 627 F.2d 901, 904 (9th Cir.1980); *United States v. Williams,* 624 F.2d 75, 77 (9th Cir. 1980); *United States v. Campbell,* 616 F.2d 1151, 1152 (9th Cir.), *cert. denied,* 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980); *United States v. Moore,* 599 F.2d 310, 314 (9th Cir. 1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980); *Ewing v. Williams,* 596 F.2d 391, 395 (9th Cir.1979); *United States v. Currie,* 589 F.2d 993, 995 (9th Cir.1979).

**31.** *Findings,* Conclusions of Law Nos. 7 and 12, pp. 15–16.

In our view, Tucker has shown that his counsel's incompetence precluded the jury from independently judging the merits of his case. *See United States v. Campbell,* 616 F.2d at 1152. Tucker's demonstration of the unfairness of the trial, moreover, was not restricted to defense counsel's failure to impeach Teerlink with his prior inconsistent statements, as suggested by the district court. Tucker has also shown that Keating's grossly inadequate trial preparation compromised every significant portion of the jury's fact finding task.

First, the jury was denied the chance to judge the credibility of the government's key witnesses. Adequate cross examination of witnesses is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The jury can hardly be said to have had the opportunity to consider the truth and credibility of the witnesses' testimony where, as the government prosecutor argued to the jury, there was no significant cross examination of any government witness. More particularly, it is undeniable that relevant prior inconsistent statements, made under oath by government witnesses, were never presented to the jury. The jury was certainly entitled to have that information presented in order to make an informed judgment as to the weight to place on the witnesses' testimony. *Id.* at 317, 94 S.Ct. at 1111.

Second, because of Keating's grossly inadequate pre-trial preparation, potential witnesses for Tucker were never interviewed and possible leads to evidence helpful to Tucker's defense were never investigated. This incompetence virtually assured that the jury would be denied the opportunity fairly and fully to judge the soundness of the government's case and the merits of Tucker's defense. The jury did not have the opportunity to consider evidence which impeached the credibility of government witnesses, or which tended to show that Tucker spoke the truth.

The government argues that Keating's failure to conduct a pretrial investiga-tion demonstrates neither incompetence nor prejudice. According to the government, "there was no other evidentiary source that could have been utilized to promote the defense other than the testimony of the defendant", and "appellant's counsel has shown us none." We find the government's argument unconvincing, even disingenuous.

Where, as here, the attorney did not even *attempt* to obtain corroborating witnesses or otherwise to conduct a minimal pretrial investigation, the record is necessarily incomplete as to the extent of the prejudice which resulted from counsel's dereliction. Without an adequate investigation, it follows that the trial record will not contain all the available evidence. For example, this court cannot review the testimony of witnesses favorable to the defendant who were never called. We cannot know if government witnesses would have been forced to tell the truth had they been confronted with their prior inconsistent statements. We believe that it would be anomalous for us to hold on the one hand that a complete failure to prepare for trial, to present all available defenses and known corroborative witnesses or adequately to cross-examine key government witnesses on the basis of prior inconsistent statements demonstrates incompetence of counsel, but then to deny any relief because the defendant cannot demonstrate *conclusively* from the face of the record the total impact of those omissions on his right to a fair trial. As the court stated in *United States v. Cronic:*

> [T]here is no way an appellate court can say precisely how a given case would have been handled by a reasonably diligent and properly prepared lawyer. The prejudice from lack of preparation and experience cannot be nicely weighed.

675 F.2d 1126, 1128 (10th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1182, 75 L.Ed.2d 430 (1983).

Although Tucker's appellate counsel has provided only a general outline of the testimony that might have been discovered and presented to the jury after an adequate investigation, he was denied the opportuni-

ty to build the very record the absence of which the government now claims is fatal to Tucker's claim. Tucker's present counsel attempted to obtain leave to conduct an investigation for the purpose of ascertaining whether prejudice resulted from Keating's failure to conduct an investigation in preparation for trial.[32] The government vigorously opposed the motion.[33] The district court denied the motion.

Under the circumstances presented in this case, where there was no investigation before trial and no opportunity to assess the impact of that omission after trial, to require Tucker to point to specific evidence that would have been presented to the jury, through an adequate pretrial investigation, would be to require the impossible. For purposes of demonstrating prejudice resulting from counsel's failure to conduct an adequate investigation, we think it sufficient that Tucker has shown that an adequate pretrial preparation would have uncovered substantial evidence which the fact finder was entitled to consider in its deliberations. Tucker's allegations that witnesses who could have corroborated his testimony were available, along with the showing made by Tucker's present attorney regarding the results of his limited investigation, sufficiently carried that burden.[34]

 Finally, the government points out that the district court found Keating's direct examination of Tucker was "professionally acceptable" and "throughout the trial he kept before the jury the basic theory of the case." *Findings*, Conclusion of Law No. 6. While it is true that a reasonably competent lawyer must be concerned with keeping the theory of his case before the jury, he must also provide factual support for that defense where such corroboration is available. Moreover, even if we assume that Keating's performance *at trial* was in some sense adequate we are still faced with the impact of his ineffective inadequate performance prior to trial on Tucker's right to a fair trial. As the Eighth Circuit observed in *McQueen v. Swenson:*

> The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case or failed to interview essential witnesses or arrange for their attendance. (citation omitted) 498 F.2d at 215–16.

In *United States v. Altamirano,* 633 F.2d 147 (9th Cir.1980), *cert. denied,* 454 U.S. 839, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981) we found no prejudice where the record showed that counsel performed a competent direct examination of the defendant and was able to keep the defense theory of the case before the jury. In *Altamirano,* counsel had at least attempted to obtain witnesses who could corroborate the defend-

---

**32.** Counsel indicated to the district court that he did not have sufficient time to conduct an investigation prior to the hearing, since his time was completely engaged with sorting through the 3500 page trial transcript and the government's massive discovery in the case. RH: 348. Nevertheless, what brief investigation he was able to do suggested that there was independent corroborative evidence suggesting that Crawford had falsely accused Tucker of ordering him to pad the cost of some of his work (RT: 414–16) and that corroborative testimony could have been elicited to support Tucker's claim that he was an outsider to the corporate hierarchy at Sells Engineering. RH: 418–19. Counsel also suggested that witnesses who were in a position to observe the interactions among the corporate officers should have been interviewed to corroborate this observation. RH: 418–20.

**33.** The government stated:

> But it strikes me that what's happening here is kind of like a second bite at the apple, or a second shot ... unless counsel can show that there is something that indicates that if an extensive investigation were conducted something of value to the defendant would have been developed, I don't think the court ought to countenance this enormous expenditure of time and public funds for what strikes me as being a rather capricious exercise. RH: 343.

**34.** In this case, the appellant was not harmed by the court's refusal to permit a post trial investigation. The record before us is sufficient to establish that the appellant was prejudiced by his counsel's incompetence. We, therefore, need not reach the question as to whether a district court should allow an investigation where the record is silent as to the prejudice suffered by the defendant as the result of counsel's incompetence.

ant's version of the facts. Moreover, in *Altamirano* there is no indication that the attorney failed to conduct an adequate pretrial investigation, or failed to impeach key witnesses with prior inconsistent statements. We found there that counsel had attempted "by many means" to keep the basic defense theory of the case before the jury, and that the defense was put before the jury in an acceptable manner. After a careful review of the record in that case, this court concluded that counsel's ineptness had not deprived the defendant of a fair trial. The facts in the matter before us are clearly distinguishable and compel a different result.

Here, we are convinced that evidence and witnesses helpful to his defense would have been discovered by an adequate investigation. The inadequacy of counsel's pretrial investigation alone is sufficient to carry Tucker's initial burden of demonstrating that he was denied a fair trial. Further, it is also clear to us that Tucker has shown that the cumulative effect of Keating's other errors prejudiced Tucker's right to a fair trial. As the court in *Ewing v. Williams* noted, a court may find unfairness—and thus prejudice—from the totality of counsel's errors and omissions. 596 F.2d 391, 396 (9th Cir.1979). The government has failed to carry its burden of persuading us that counsel's incompetence was harmless beyond a reasonable doubt.

The judgment is reversed and remanded.

ELY, Circuit Judge, concurring:

Under the current law of our court and that of numerous other Courts of Appeals, I must concur in the opinion of my Brother Alarcon. His opinion reflects intensive study and remarkable scholarship. As I express my concurrence, however, I cannot resist the temptation to reiterate my deeply held conviction that ineffective representation by the attorney for an accused should be equated with lack of any representation whatsoever. I have no doubt that one tried for a criminal offense often fares very much worse, especially in a jury trial, if he is represented by incompetent counsel than he would fare if he had no attorney at all. This, I believe, is an undeniable truth. My belief is squarely based not only upon my own personal legal experience for almost fifty years, participating in hundreds of trials as a trial lawyer and subsequently reviewing countless records as a circuit judge for almost nineteen years. It is also founded upon experiences related to me by highly respectable attorneys and judges during my officerships in the Texas Junior Bar Association, the California State Bar, the Los Angeles County Bar Association, particularly during my presidency, and intimate associations arising from my membership in the House of Delegates of the American Bar Association and from my many years of fellowship in the American College of Trial Lawyers.

If my belief in the above respects is correct, and that belief has thus far been unalterable, then it should logically and fairly follow that when it is determined that an accused has been represented by a legally incompetent attorney, as is the case here, it should be presumed, without further inquiry and as a matter of law, that the accused has suffered such grievous prejudice as to entitle him forthwith to a new trial. *Compare Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir.1978) (Hufstedler, Circuit Judge, joined by Ely and Hug, Circuit Judges, dissenting at 1334).

SNEED, Circuit Judge (concurring in the result):

I concur in the holding that the appellant was deprived of the effective assistance of counsel and that his conviction should be reversed. The appellant amply has established that his counsel at trial was incompetent and that his right to a fair trial was prejudiced. That is enough to entitle him to a reversal. That is all that need be said.

Regrettably more has been said and because of this I, also regrettably, will say more. The test for ineffective assistance in this circuit has been and remains drawn from *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir.1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793

(1979). The en banc court in *Cooper v. Fitzharris* established a two-part inquiry into ineffectiveness of counsel: first, the defendant must show he was denied "reasonably competent and effective representation," *id.* at 1327; second, "where, as here, the claim of ineffective assistance is founded upon specific acts and omissions of defense counsel at trial, the accused must establish that counsel's errors prejudiced the defense," *id.* Judge Alarcon does not disagree with this.

Incompetent counsel was described in *Cooper v. Fitzharris* as one that made "errors a reasonably competent attorney acting as a diligent conscientious advocate would not have made." *Id.* at 1330. Also presence of such counsel was distinguished from situations in which there was no counsel or in which "counsel was prevented from discharging his normal functions." *Id.* at 1332. The verb "prejudice" was used without modifiers.

The burdens placed on the defendant and the government under *Cooper v. Fitzharris* are as follows:

1. *The defendant's burden.* In this circuit the defendant has the burden of showing "prejudice" or "actual prejudice" from the errors of counsel. The en banc court in *Cooper v. Fitzharris* did not state specifically the quantum of proof necessary to demonstrate the existence of prejudice. However, this court has described repeatedly the defendant's burden as one of showing actual prejudice. *See Brown v. United States,* 665 F.2d 271, 273 (9th Cir.1982) (Tang, J., concurring) (describing *Cooper* as "actual prejudice" test); *United States v. Hearst,* 638 F.2d 1190, 1194 (9th Cir.1980) (*Cuyler v. Sullivan* showing of adverse effect not same as *Cooper* showing of "actual prejudice"), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981); *United States v. Coupez,* 603 F.2d 1347, 1350 (9th Cir.1979) (stating requirement as "actual prejudice"); *see also United States v. Winston,* 613 F.2d 221, 224 (9th Cir.1980) (no "substantial prejudice" from counsel's failure to inform accused of judge's participation in competency hearing); *Lewis v. Cardwell,* 609 F.2d 926, 928–29 (9th Cir.1979) (also using "substantial prejudice" standard). Also the standard repeatedly has been described more simply as one of showing prejudice.[1] The difference between "prejudice" and "actual prejudice" apparently has been thought to be the same as between "pregnancy" and "actual pregnancy"—nonexistent.

Some might read Judge Alarcon's opinion as indicating that he discerns what others have not seen. I think such a reading would be mistaken. He makes no change in the prejudice standard. *See* pp. 587, 588, 591, 593, 594, 595. It is true he describes the defendant's burden alternatively as one of showing denial of a fair trial, *see* pp. 588, 589, 593, 594, 595, or an impairment of the defense, *see* pp. 586, 587, 588. And it is also true that he goes to great lengths to dismiss those cases describing the *Cooper v. Fit-*

---

1. For other cases stating the prejudice requirement without finding it unsettled, see *United States v. Coleman,* 707 F.2d 374, 376 (9th Cir. 1983); *United States v. Christopher,* 700 F.2d 1253, 1261 (9th Cir.1983); *Baumann v. United States,* 692 F.2d 565, 572 (9th Cir.1982); *United States v. Gibson,* 690 F.2d 697, 704 (9th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1446, 75 L.Ed.2d 801 (1983); *Hudson v. Rushen,* 686 F.2d 826, 832 (9th Cir.1982), *cert. denied,* —— U.S.——, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *Hall v. Sumner,* 682 F.2d 786, 787 (9th Cir.1982); *Powell v. Spalding,* 679 F.2d 163, 167 (9th Cir.1982); *Fritchie v. McCarthy,* 664 F.2d 208, 214 (9th Cir.1982); *United States v. Donn,* 661 F.2d 820, 824 (9th Cir.1982) (per curiam); *Hines v. Enomoto,* 658 F.2d 667, 675 (9th Cir.1981); *Satchell v. Cardwell,* 653 F.2d 408, 409 (9th Cir.1981), *cert. denied,* 454 U.S. 1154, 102 S.Ct. 1026, 71 L.Ed.2d 311 (1982); *United States v. Mayo,* 646 F.2d 369, 373 (9th Cir.) (per curiam), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981); *United States v. Altamirano,* 633 F.2d 147, 152–53 (9th Cir.1980), *cert. denied,* 454 U.S. 839, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Gustave v. United States,* 627 F.2d 901, 904 (9th Cir.1980); *United States v. Williams,* 624 F.2d 75, 77 (9th Cir. 1980); *United States v. Campbell,* 616 F.2d 1151, 1152 (9th Cir.), *cert. denied,* 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980); *United States v. Moore,* 599 F.2d 310, 314 (9th Cir. 1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980); *Ewing v. Williams,* 596 F.2d 391, 395 (9th Cir.1979); *United States v. Currie,* 589 F.2d 993, 995 (9th Cir.1979).

*zharris* test as one of actual prejudice. *See* pp. 590–591 & n. 30. However, he returns to the proper baseline when he admits that the standard is one of real, not imagined, prejudice, p. 591, and when he criticizes the "actual prejudice" test because of its "rhetorical surplusage," P. 592. Thus, although it is clear Judge Alarcon prefers "prejudice" to be unmodified, a stylistic preference to which I also subscribe, I conclude he sees no difference between actual prejudice and prejudice simpliciter.

2. *The government's burden.* The government has neither the burden of going forward nor persuasion until the defendant has established the existence of incompetency and prejudice. At that point it must go forward with such proof as it might have to rebut the existence of incompetency or prejudice. If unsuccessful in its rebuttal efforts the defendant wins a new trial, if successful the conviction is affirmed. This description of the government's burden conforms to that appearing from a reading of the more than a score of ineffective assistance cases this court has decided since *Cooper v. Fitzharris.*

It is fair to say that Judge Alarcon does not believe that this is a complete description of what might be described as either the "government's right" or the "government's burden." As he sees it, after the defendant successfully has established ineffective assistance and prejudice the government must "bear the burden" of persuading the court beyond a reasonable doubt that the counsel's errors and omissions did not deprive the defendant of a fair trial. P. 588. In short, he wheels into place the test of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), although he acknowledges that the en banc majority in *Cooper v. Fitzharris* neither invoked it, nor referred to it, and that it only appeared in Judge Hufstedler's dissent. *See* 586 F.2d at 1340–41 (Hufstedler, J., joined by Ely & Hug, JJ., dissenting in part).

From an analytic point of view one must acknowledge that under *Chapman* the government always has the right to attempt to show that a constitutional error in the process by which the defendant was convicted was harmless beyond a reasonable doubt. A difficulty with its injection into the ineffective assistance setting is that it provides the government with neither an arrow nor a bow with strings. Assuming the defendant has established prejudice there is little or no chance the government will be able to show it to have been harmless. Discharge by the defendant of his burden forecloses *Chapman* as a useful affirmative defense by the government. There may be hypothetical situations that can be imagined in which this would not be so; however, I have not been able to think of any.

Injection of *Chapman* into this area, however, can have an effect perhaps more to Judge Alarcon's liking. That is to reduce the magnitude of the defendant's burden with respect to the showing of prejudice. This effect would constitute an example of what might be called jurisprudential hydraulics. As has been observed by many, a rigid divorce law creates a flexible law of annulments. Similarly here; treating *Chapman* as a burden of the government will tend to reduce the burden of the defendant to show prejudice. The same point may be put differently. If *Chapman* had a large role to play in ineffective assistance cases it must be because the defendant's burden with respect to prejudice is fairly small. Put philosophically, prejudice and *Chapman* function as the Yin and Yang in the ineffective assistance area. Perhaps the realization of this relationship helps explain Judge Alarcon's distaste for "actual" as a modifier of "prejudice." But perhaps not.

In any event, Judge Alarcon's reliance on *McNulty v. Olim,* 652 F.2d 1369 (9th Cir. 1981), is misplaced. As one who sat on the court that decided the case, I am confident that Judge Alarcon attributes to it an unintended effect. That would not be improper if its language supports his attribution. It does not. The case was not concerned with *Chapman;* no mention of *Chapman* appears in the opinion. The district court sought to

force the court to refine further the quantum of proof necessary to establish the existence of prejudice. The court was able to decline the invitation because under either of the formulations offered by the district court, from whose judgment the defendant was appealing, the defendant had failed to establish the existence of prejudice. The court made clear in the course of the opinion, however, that it was discussing the defendant's burden of establishing incompetency and prejudice. *See id.* at 1370–71. Moreover, we did suggest that, in addition to the two formulations offered by the district court, another might be whether prejudice was established with reasonable certainty. It is true that we stated the standard in a negative, rather than a positive, fashion. We said:

> This strongly suggests that the proper test might well be whether the absence of prejudice is established with reasonable certainty.

*Id.* at 1371. A positive mode of expression would have been:

> This strongly suggests that the proper test might well be whether prejudice is established with reasonable certainty.

The negative mode employed should not be understood to have been an attempt to diminish the defendant's burden by enlarging *Chapman*'s role. In sum, it is quite wrong to conclude that "under the *McNulty* dictum ..., the government has the burden of convincing this court to a reasonable certainty that no prejudice occurred as a result of counsel's errors or omissions appearing in the record." P. 588.

When all is said and done Judge Alarcon, Judge Ely, and I agree that in this case the *Cooper v. Fitzharris* test has been met. Judge Alarcon vacillates somewhat but in the end I think he and I agree as to defendant's burden to establish prejudice. Judge Ely, at least in his heart, parts company with us on that point. Judge Alarcon and I differ somewhat concerning the proper role of *Chapman.* If we put that difference on one side of Justice's scale and a feather on the other, I would wager the balance would tip toward the feather.